## STATE v. McINTOSH.

1. HOMICIDE—BURDEN OF PROOF.—In a trial for homicide, while the defendant is only bound to prove the facts necessary to sustain his plea of self-defence by a mere preponderance of the testimony, the State is bound to prove every material element of the charge beyond all reasonable doubt. State *v.* Bodie, 33 S. C., 132, followed.

2. HOMICIDE—SELF-DEFENCE.—The plea of self-defence is not sustained, unless the defendant make it appear by the preponderance of the evidence that it was necessary for him to take the life of the deceased in order to protect his own life, or to protect his person from some grievous bodily harm. If there was open to him a probable means of avoiding the homicide, the necessity that excuses did not exist.

3. IBID.—IBID.—CASTLE.—Where the defendant kills the deceased while an invited guest in his (defendant's) own house, without any notice to leave, he does not occupy the position of one who slays to protect his castle.

4. CONVICTION OF MANSLAUGHTER—CHARGE AS TO MURDER.—A conviction of manslaughter operates as an acquittal of the charge of murder, and on appeal from such conviction, alleged erroneous instructions to the jury, as to the charge of murder, are immaterial.

Before NORTON, J., Abbeville, June, 1893.

This was an indictment against Singleton A. McIntosh for the murder of James N. Newby, at defendant's home, on December 24, 1891. See 39 S. C., 97. The charge of the judge to the jury, omitting so much thereof as has no bearing upon the exceptions, was as follows:

Mr. Foreman and Gentlemen of the Jury: The defendant in this case is charged in this indictment with the murder of a fellow-being, and it involves, of course, questions of fact as

well as questions of law. The first question for your consid-
eration is, did the defendant kill the person who is alleged to
have been killed; and, if he is guilty of any offence, what
offence is he guilty of, if he did the killing? There are two
degrees of murder which are offences against the law—murder
and manslaughter. But justifiable homicide, the third degree,
is no offence against the law; and, therefore, you will take
notice particularly of these three different grades of homicide.

The highest grade of homicide is murder. Murder is the
felonious killing of any person with malice aforethought, either
express or implied. Excusable homicide is rendered so by
several reasons which operate as a justification or excuse in
law that is wholly excusable. And some confusion might,
perhaps, be in your mind to distinguish the manner of proof
as to the different grades of homicide. There have been dif-
ferent witnesses sworn upon the stand. I do not mean to say
that they have all been consistent in their statements. But
the defence, in not putting up any testimony, insist that the
case has not been made out by the State. That is to say, if
you take that testimony, so much of it as you can possibly
believe, and do believe, and formulate a theory out of it which
will show a state of facts that would excuse this defendant as
to the killing which is admitted to have occurred, and you
would not have any doubt about that if it were presented to
you singly (as in the case where a man is executed, and it is
brought to your attention that he had been executed under a
proper mandate of the court, it would appear clearly that it
was a justifiable homicide), you need not be confused when the
question comes up for your consideration in locating the char-
acter of the crime as between self-defence and justifiable homi-
cide, or whether or not it was by reason of self-defence. Don't
let that confuse you in the one case or the other. It would be
necessary for it to appear that the defendant had not been
proven to be guilty beyond a reasonable doubt. In the case
of the sheriff, if he would hang a man, and if he did not pro-
duce the authority, although he had it, but if he did not pro-
duce it, he might be considered guilty of murder; or if he
hung the man at a different place from where he was ordered

to hang him, he would be guilty of murder. But you would say that the sheriff had not been proven legally guilty by the testimony offered by the State.

In order to make out a case of self-defence, it is necessary for the defendant to prove his innocence by a preponderance of the testimony; and the State must make out its case beyond a reasonable doubt when you take all of the testimony in the case into consideration; and you must believe all of it beyond a reasonable doubt before you can convict him. In order to avail one's self of the plea of self-defence, it must appear that he was without fault in bringing about the difficulty; that at the time he struck the fatal blow he was so assaulted that he believed that he had no other probable means of escape from immediate death or from immediate serious bodily harm. And the defendant must not only have believed that himself, but he must act upon that belief subject to your judgment that a man of ordinary firmness and resolution, endeavoring to obey the law, would have believed the same thing under similar circumstances in which the defendant was placed at the time.

Now you are ready to begin to apply the more minute definitions of the different degrees of homicide. Murder is the killing of any person with malice aforethought, either express or implied. Malice is a technical term. Ordinarily, we use the term as if it was a grudge or hatred. If there was any grudge or hatred, and the killing is upon that grudge or hatred, that is express malice; and that express malice is evidenced by certain deliberation—by such deliberation as lying in wait and shooting from ambush. That would be a very great evidence of express malice. And so, if one deliberately and intentionally poisons another, it must be upon an old grudge. Implied malice is malice implied from the law itself. Every killing, if nothing more occurred except the killing, would be upon an implied malice. But you are to take into consideration that that is implied by law. It is a presumption of the law. And whenever the facts and circumstances attending the killing have been developed before you, the law does not imply any malice, but it affords you room for the exercise of your judgment, and it gives you certain rules of

law which will aid you in determining whether there is or is not malice.

If all the circumstances in the case gave you no more light than the mere fact that the killing occurred, you would not be helped at all, but would still be left to your presumption of law; because, if the fact of the killing is made out beyond a reasonable doubt, then you must be able to say, from the facts and circumstances, whether it was a malicious killing or not. And if the circumstances throw no light at all on it, then you would still be left to the presumption of the law; but if the circumstances throw any light upon the character of the transaction at all, then you must determine from these circumstances what the character of those transactions were; and you are to say whether it was from malice, or upon sudden heat and passion, or whether it was justifiable or excusable.

Then malice is defined also to show the deliberation. But the deliberation need not be any longer than enough to determine whether or not he will take the life of his adversary. If long enough to determine, then it will be long enough to be malicious; if nothing more appears for it to be malicious, if it is only for a moment, and that is sometimes without any apparent motive or deliberation, but upon the impulse of the moment. Sometimes a person takes up an axe and inflicts the fatal blow; or shoots one down; that impulse, then, without any provocation, it is said in the law would be sufficient to imply the malice, nothing else appearing. But malice does not always exist when there is a killing with a deadly weapon, a weapon which causes death. But the presumption may be rebutted when it is highest. Certainly it can be rebutted when the act has been committed with a deadly weapon, which is the very highest. This presumption can be rebutted only with reference to the facts which have been testified to in this case.

But—not attempting to determine for you what facts have not or have been proven—where the killing is with a gun, as in this case, the killing may be reduced to manslaughter, if it is done in sudden heat and passion. For instance—without being able, if I desired to do so, to go all over all the testimony

for the purpose of illustration—I say to you that if the defendant here did as he says he did, and not having any malice, get up from a table at which the deceased was sitting, for the purpose, *bona fide*, of avoiding a difficulty, and the conduct of the deceased was so provoking as to arouse his blood, to temporarily lose control of his passions, then it would be manslaughter, even if adhered to still further to reduce it. But the law don't allow the defendant, when slightly touched, to put up the excuse that his blood was so inflamed that he had lost control of his passions, unless it was really so, or unless the circumstances justified the jury in believing that it was so. That is, there must be sufficient legal provocation. If there was merely a light touch or blow, he would not have the right to say that his blood was inflamed so that he had lost control of his passions. The law would not excuse him if he got into that uncontrollable fit, but it would judge him by a man of ordinary firmness and courage. But even a slight blow, or even no blow at all, when it is accompanied by menace to serious bodily harm or life of the defendant, if it was in your judgment sufficient to excite the defendant's passions beyond control, would reduce the crime from murder to manslaughter.

Now, when you go to consider that subject, you inquire whether the deceased was making towards the defendant, and whether it was under such circumstances after a threat, and under such circumstances as would have induced him, and would have induced a reasonable man, to have lost the control of those passions, you are to determine. You are to determine what knowledge the defendant had of the surroundings of the deceased—what opportunities he had of knowing how much he was in danger by being armed or not being armed, or any other circumstances that he may have known, and that in your judgment the testimony shows that he must have known of the condition of the deceased, and you are to determine from that what the degree of menace to his body was—because I don't think he told Mr. Mann, the sheriff, that he was actually struck, but that he was making at him, as if he was trying to do him serious bodily harm. I don't remember the exact words, but you do. You will get the real meaning of the words and apply it.

23—40

Then, are you satisfied from the surroundings of the case that the defendant was guilty of murder, or that he was guilty of manslaughter? If you come to the conclusion that the law of self-defence has not been sufficiently minutely laid down for you to come to a conclusion, then I desire to state it to you more particularly. A man must be without fault in bringing about a difficulty; that is the first element to be shown to constitute self-defence—no matter whether it comes from the State's witnesses or from the defendant's witnesses, but you view the whole testimony in determining the question. Was the defendant without fault in bringing about the difficulty? You may review all of the evidence—you may go back to the first time we hear of those parties being together, to the time that they were at Bordeaux, and to the time that the invitation was extended to go to his house. Was the invitation genuine? Was it for the purpose of having mutual enjoyment, or was it for the purpose of getting the deceased to his house, and then slay him there? Those are the questions that are to be considered by you; and they might not be worthy of consideration, but I suggest the possibilities which you may consider in reaching your conclusions. You may consider, when they were there that night, and the next morning, what was the conduct of the defendant. Was it collected and scheming, for the purpose of inveigling the deceased into some trap whereby he would kill him? The law would not tolerate any such thing as that. And then, at the very moment when the defendant left the table, did he go, as he says he did, for the purpose of avoiding a difficulty? Is that true?

Now, you are to determine what is true, not by the words that the witnesses state upon the stand merely, but you are to determine what is the truth of the matter, not only by the words, but by the witnesses themselves, and the opinion you have as to what is the truth in the matter. Well, if you conclude that it was feigned at the time, and he changed his mind, *bona fide,* he had a right to do it. If it was not feigned, it would not be conclusive, because it does not deprive it of all of the elements of self-defence. But, on that one point, if you believe that the assault was made upon the defendant by the

deceased for the purpose of doing him harm, did he use threatening language, and follow it up with threatening acts? When a great many men carry concealed weapons, it is not safe to require of every defendant that he shall sit still and wait until the assault is actually made upon him—that is, a weapon drawn and aimed at him; then it might be too late for one to save himself. But you are to look carefully on both sides of this case, and you are to determine.

Now, if you conclude that that was an assault, and the defendant really did believe, and had a right to believe, that the deceased was approaching him to do him violence, then you are to determine the question what that violence was—that is to say, the extent to which the defendant believed, under all of the circumstances, so far as they were known to him, and so far as you judge they were known to him. What would he have believed the extent of the injury about to be inflicted upon him by the deceased? Could the deceased, in his opinion, have then had an opportunity to have used the weapon? Did he have time at that time to have attacked him and do him serious bodily harm at the short distance that they were from each other, before he could do anything except what he did? What did the defendant really believe would be the injury that was likely to be done to him by the deceased? But you are not to take what the deceased would have done or yourself; but you are to take a man of ordinary firmness and resolution, a man trying to carry out the law, and you are to say what a man of that kind would have believed under the circumstances. What would such a man have believed under the circumstances, if he knew as much as the defendant did under the circumstances and possibilities of the deceased to do him serious bodily harm? If the defendant really thought and believed that the deceased would do him serious bodily harm, that would be another step in the direction towards making out self-defence; or if a man of ordinary firmness and courage, or a weak man, believed that, it would be made out.

There is still one other element of self-defence to be shown by the testimony before the defendant would be entitled to rely upon it—that is, if all these other circumstances concurred to

have made this condition, and for a man of ordinary firmness to believe that he was in danger of serious bodily harm, and that there was no other probable means of escape—not that there was no possible means of escape; men might run around the corner and escape the bullet of the assassin, although it was probable that they could not; yet, if the word "possible" was used in the definition of the term murder, then, to make out the plea of self-defence, running around the corner would be required; but it is not required—having all these other elements in your favor, you have the right to shoot him down to prevent the execution of that probability, and you would not be required to take the means of escape. Now what were the means of escape for this defendant? You are to take into consideration whether or not any persons were present, and whether or not the defendant, in making up his chances for life or the prevention of serious bodily harm, believed that he could have controlled other persons in time to have saved him, or could have avoided being killed himself or killing his neighbor and friend. And if you come to the conclusion that he thought that there was any other means of escape, then you ought not to give him the benefit of self-defence. But if you come to the conclusion that there was no other probable means of escape than to shoot him, then you ought to give him the benefit of the plea of self-defence, if you think he was a man of ordinary firmness.

I cannot say—as I have not been able to listen to all of the testimony—what inconsistencies are in the testimony, if any; but that is for you to say. You are to take all of the testimony into consideration, and if upon a review of the whole testimony you have any reasonable doubt of the guilt of the defendant, arising out of the testimony, then you ought to give him the benefit of that doubt, and find a verdict of not guilty.

I am requested to charge you: 1st. "That, under the plea of not guilty, interposed by the prisoner in this case, he is not compelled to rely upon the plea of self-defence, which is an affirmative defence; but if the jury, after their consideration of all the testimony in the case, have a reasonable doubt as to any material fact necessary to constitute the crime of murder

REP.] . November Term, 1893.

or of manslaughter, then the jury must find a verdict of not guilty." I so charge you. It is in accordance with what I have already said.

2d. "That although the law ordinarily presumes malice from the use of a deadly weapon, this is not the case where the State introduces testimony as to the facts and circumstances attending the homicide." I so charge you ; but you take it in connection with what I said to you in the direct charge. You are to be governed by the facts and circumstances, if they throw any light upon it.

3d. "That if the jury find from the testimony that the prisoner left the State immediately after the homicide, for the purpose of avoiding arrest, this is not to be construed as evidence of guilt, but would be only a circumstance to be considered by the jury." I so charge you, that it would only be a circumstance to be considered by you in connection with all of the testimony in the case. Counsel explained very fully to you what I said upon this subject, and he stated it correctly— that it might be no evidence at all ; because a very timid man might jump up and run off, and it would be no evidence of guilt at all. A man might be suffering from some particular disease, and he might think that confinement might be injurious to him, and he might not want to be confined : and it might not be a circumstance to consider at all, because there might not be a judge near by that he could apply to for bail. And, on the other hand, it might be a circumstance to be considered ; and if so, you are to determine what weight is to be given to it.

4th. "The conduct of the prisoner, in surrendering himself to the sheriff, is a circumstance to be weighed by the jury." Of course, you will take that into consideration, too. * * *

Counsel asks me to charge you as to a man's rights in his own house. It is a high and exalted privilege to be a master of one's own house. It is the right of the master of the home to keep every intruder out, with or without cause. He doesn't have to consult with his neighbors and ask them who he shall admit into his house. He does not have to consult anything except his own wishes. And when one has intruded himself

into one's house, he has the right to remove him from it. He
has the right, as the law says, to gently lay his hands upon
him and tell him to go. And he has the right to use so much
force under the circumstances as is necessary to eject the tres-
passer. If a trespasser assails him with violence, he has the
right to not wait to use that gentle means, but he has the right
to use such force as is necessary to eject him. Of course, in
all these cases involving these questions he must use that right
subject to a review by your panel. There is no dispute as to
how the deceased entered the house. He entered it upon the
invitation of the defendant; and having so entered, before
he could be rudely driven from it, or shot down, it was
the business of the defendant here to have notified him to
leave, or else he must make out a plea of self-defence as if he
had notified him. In other words, when one of you invites a
friend to his house, that friend is entitled to notice before you
have a right to eject him from your house. The law requires
that when you have allowed a friend to enter your door, you
must give him reasonable notice to leave your door before you
eject him—reasonable notice depending upon the violence of
his conduct, or the loss of the power to understand the notice
to leave.

The jury having returned into the court room for further in-
structions, the judge charged :

* * * Now, as to excusable homicide. When a homicide
has been committed, it must occupy either the degree of murder,
or of manslaughter, or of excusable homicide. Justifiable ho-
micide is the equivalent of it, but in stronger terms. Excusable
homicide is not a crime—very often a duty. In a case where
self defence is relied upon, then the circumstances must show,
before the defendant can receive the benefit of it, that he was
without fault in bringing about the difficulty. Consider all of
the circumstances of the case. At the time of the homicide he
must have believed that the deceased was assaulting him, and
assaulting him in such a manner that he had no other probable
means of escape from that assault except by taking the life of
his assailant, or by doing what he did do, to prevent the loss of
his own life or serious bodily harm to himself. Then another

step in the direction of self-defence is made out; but it is not necessary that a person should believe that himself only, but that a man of ordinary firmness would do the same as the defendant here did.

The defendant was found guilty of manslaughter, and appealed.

*Messrs. Benet & Cason* and *E. B. Gary,* for appellant.

*Mr. Ansel,* solicitor, contra.

February 17, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. Under an indictment for the murder of James N. Newby, the defendant was convicted of manslaughter, and having been sentenced to confinement in the penitentiary, at hard labor, for the term of five years, appeals upon the several grounds which will hereinafter be considered. These exceptions impute to the Circuit Judge sundry errors in his charge to the jury; and as they are based upon detached quotations from the charge, it is necessary that the entire charge should be set out in the report of this case, in order that the connection in which the words quoted as the basis of the several exceptions were used may be seen; for it has been repeatedly held that the correctness of the charge must be determined, not by detached sentences, but by a consideration of the charge as a whole. It should also be observed that there was no controversy as to the fact that the deceased was killed by the prisoner, and the only question for the jury was as to the character of the homicide—whether it was murder, manslaughter, or excusable as done in self-defence.

The first exception imputes error to the Circuit Judge in using this language to the jury: "In order to make out a case of self-defence, it is necessary for the defendant to prove 1 his innocence by a preponderance of the testimony."

From the connection in which this language was used in the charge, it is very manifest that it was not used, and could not have been understood by the jury, as conveying the idea that the accused is ever called upon to prove his innocence in

the first instance; but the meaning plainly was, and was so undoubtedly understood by the jury, that while the State was bound to prove its case beyond all reasonable doubt, the defendant who sets up a plea of self defence is only bound to prove the facts necessary to sustain such plea merely by the preponderance of the evidence; and when that degree of evidence is offered, his innocence is established. The manifest object and effect of the language objected to was to draw the distinction, well recognized in the law, between the degree of evidence required to sustain the plea of self-defence—that is, the innocence of the accused—and that which is required to sustain the charge made by the State. This is manifest from the language used by the judge in the same sentence, immediately after the language quoted as objectionable, where the jury are explicitly instructed that the State must make out its case beyond a reasonable doubt. We do not think that the jury could have failed to understand from that portion of the charge here under consideration, that, while the defendant was only bound to prove the facts necessary to sustain his plea of self-defence by a mere preponderance of the testimony, the State was bound to prove every material element of the charge beyond all reasonable doubt; and this is in direct conformity to the rule as laid down in *State* v. *Bodie*, 33 S. C., at page 132–3. The first exception cannot, therefore, be sustained.

We will next consider that portion of the charge which is objected to in the second, fourth, and seventh exceptions, which may be considered together, as they all complain of the instructions given to the jury, as to what was necessary to sustain the plea of self-defence; for in the second exception the complaint is, that the jury were instructed that in order to avail one's self of the plea of self-defence, it must appear that "at the time the prisoner struck the fatal blow, he was so assaulted that he believed that he had no other probable means of escape from immediate death, or from immediate serious bodily harm." In the fourth exception the language objected to is: "If you come to the conclusion that he (the defendant) thought that there was any other means of escape, then you ought not to give him the benefit of self-defence."

And in the seventh exception, the language pointed out as objectionable is this: "At the time of the homicide, the prisoner must have believed that the deceased was assaulting him in such a manner that he had no other probable means of escape from that assault except by taking the life of the deceased, or by doing what he did do, to prevent the loss of his own life or serious bodily harm to himself." In the case of *State* v. *Wyse*, 33 S. C., at page 594, it is said that "the plea of self-defence rests upon the idea of necessity—a legal necessity—that is, such a necessity as, in the eye of the law, will excuse one for so grave an act as the taking of human life." In other words, one cannot claim indemnity or excuse for taking the life of another, unless he makes it appear, by the preponderance of the evidence, that it was necessary for him to do so in order to protect his own life, or to protect his person from some grievous bodily harm; and, of course, where it appears that there were other probable means by which the shedding of human blood might have been avoided, it cannot, with any propriety, be said that there was any such necessity to take human life as would excuse the slayer. We do not think, therefore, that either of these exceptions can be sustained.

The sixth exception is in these words: "Because his honor erred in charging the jury, that the deceased having entered defendant's house upon defendant's invitation, it was the business of the defendant to have notified him (the deceased) to leave, or else he must make out a plea of self-defence, as if he had notified him." It seems to us, that when the language here objected to is read in connection with that portion of the charge in which it appears, all objection to it must disappear. For the judge, while fully recognizing the sacredness of one's home, and the right of the owner to protect it from all intruders, very properly drew a distinction between a case of a trespasser intruding himself into the dwelling house of another, and a case in which one enters the house of another by the invitation of the owner. For here the undisputed evidence was, that the deceased was urgently invited to the house of the prisoner for the purpose of engaging in a Christmas frolic, and that they did engage in a drunken debauch, which, doubt-

less, gave rise to the difficulty that terminated in bloodshed.
It does not seem to us that the defendant can claim anything
from that well recognized right which allows one to protect his
house, where his invited guest was shot down in his own house,
without any notice, even, to leave. This exception must, there-
fore, be overruled.

As to the third and fifth exceptions,[1] we are somewhat at a
loss to understand how they are pertinent to the present ap-
peal. These exceptions seem to relate to so much of the
charge as contained instructions to the jury in reference
to the charge of murder; but as the defendant was con-
victed of manslaughter only, we do not see what application
they can have to the present appeal. For, even if we could
hold that the jury were improperly instructed as to the charge
of murder (which, however, we must say is not the case), we
are unable to perceive how such error (if there was error)
could affect an appeal from a conviction of manslaughter,
which practically amounts to an acquittal of the charge of
murder. The language objected to in the third exception is
taken from that portion of the charge in which the judge was
explaining the distinction between murder and manslaughter,
and the instruction there given, in case the jury took a certain
view of the facts, that it would be manslaughter and not mur-
der, can in no sense be regarded as charging on the facts, as it
did not intimate in the slightest degree what was the judge's

---

[1] These exceptions were as follows: III. Because his honor erred in charging
the jury as follows: "I say to you, that if the defendant here did as he says he
did, and, not having any malice, got up from a table at which the deceased
was sitting, for the purpose *bona fide* of avoiding a difficulty, and the conduct
of the deceased was so provoking as to arouse his blood, to temporarily lose
control of his passions, then it would be manslaughter." V. Because, when
his honor was requested to charge the jury, "That although the law ordinarily
presumes malice from the use of a deadly weapon, this is not the case where
the State introduces testimony as to the facts and circumstances attending the
homicide," and having said, "I so charge you," he erred when he qualified it
by adding, "But you take it in connection with what I said to you in the direct
charge," without stating or indicating what part of the direct charge was to
affect the proposition of law embodied in said request, or in what manner or to
what extent it was to be affected.

opinion of such facts, but expressly informed the jury that *if* they believed certain facts, *then* it would be manslaughter. The language upon which the fifth exception is based manifestly relates to the charge of murder, of which the defendant was practically acquitted, and could not possibly relate to the charge of manslaughter, of which the defendant has been convicted, for certainly malice is not an ingredient in the last named offence. Besides, the mere failure to repeat what had been already stated to the jury was certainly no error of law.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN. I concur in the result. Opinion to be filed hereafter.