STATE v. TALBERT.

1. A DYING DECLARATION is not inadmissible because made under oath.
2. IBID.—OBJECTION—OTHER GROUNDS.—The admission of a dying declaration being objected to upon the ground that it was under oath, the objection overruled, and exception noted, the inadmissibility of such declaration, because it also included a statement of matters that occurred some months before the homicide, cannot be considered on appeal. The "exception noted" was only to the ruling of the judge upon the objection made before him.
3. EVIDENCE—WARRANT—OPINION.—A witness for the State was properly forbidden to testify on cross-examination as to the offence charged in a warrant that he had issued as trial justice against another man, as the warrant itself was the best evidence, and, besides, would have been only the opinion of the witness, or of the affiant, as to the other man's guilt.
4. IBID.—RES GESTÆ.—Testimony of a conversation between the accused and a third person at the house of the former after the homicide elsewhere committed, is not competent testimony in his behalf.
5. IBID.—IBID.—EXCEPTIONS cannot be considered where based upon alleged error in rulings not shown by the record to have been made. A declaration of deceased, upon crawling into a store immediately after he was shot, is admissible in evidence against his accused murderer as part of the *res gestæ.*[1]
6. SUPREME COURT—CORRECTION OF JUDGMENT.—An inadvertent error in the form of the judgment of this court corrected by the clerk under direction of a subsequent order from the justices of the court.

Before TOWNSEND, J., Berkeley, February, 1894.

Indictment against Henry Talbert for the murder of Harry Wilson on November 28, 1893.

*Mr. S. J. Lee,* for appellant.

*Mr. Jervey,* solicitor, contra.

June 25, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The appellant was indicted for and convicted of the murder of one Harry Wilson, and from the judgment rendered has taken this appeal upon the

[1] See note in 19 L. R. A., 733.

several grounds hereinafter stated. The circumstances attending this homicide may be briefly stated as follows: On the evening of the 28th of November, 1893, the deceased left the store of one Green, about 7 o'clock, and upon reaching the fence in front of the store, distant therefrom but a few feet, was shot. He immediately returned to the store, saying that Talbert had shot him. Very soon after the shooting, Richardson, one of the witnesses, went to the house of the defendant, some 100 yards distant from Green's store, and found Talbert in bed, and after saying something to him, he got up and dressed, and taking his gun with him, went first to the store of one Lee, who examined Talbert's gun, and expressed the opinion that the gun had not been recently fired. He then went to Green's store, and asked the section master to examine his gun. When Trial Justice Sweeney was upon the stand as a witness, he was asked by defendant's counsel whether he had issued a warrant against one Oliver, and upon his replying in the affirmative, he was asked what was the offence charged in that warrant, to which the solicitor objected, upon the ground that the warrant itself was the best evidence of what was the charge contained therein, and the objection was sustained. This witness was subsequently asked, upon whose information was that warrant issued, which seems to have been objected to upon a similar ground, and the objection was sustained. The solicitor offered in evidence, as the dying declaration of deceased, a deposition of the deceased, of which the following is a copy:

"Personally appeared before me, Harry Wilson, who, being made acquainted with his condition, and realizing that he is in a dying condition, makes the following statement: My name is Harry Wilson; I am a constable for Mr. Sweeney, who is a trial justice at Summerville; I live at the Ten Mile Hill; I left home about half-past 4 o'clock this afternoon, to meet Judge Sweeney; I met him at the depot; after talking with him a few minutes, I left to go home; on my way, I stopped at Mr. Green's store. As I left Mr. Green's, and got as far as his fence, I was fired at by some one who was opposite me, behind some pine trees. As I was shot I fell on my knees; the person who shot me ran out; I recognized him as Talbert; I don't

know his other name; he works on the railroad near the Ten Mile Hill; Talbert tried to shoot me once before; he shot at me last May, but missed me; we had a fuss about some beer bottles, when he tried to shoot me in May; he gave me no warning when he shot me this afternoon; he just shot and ran away; after I was shot I crawled back to Mr. Green's store, and told him that Talbert had shot me; Mr. Green helped me in the piazza. Sworn to before me, this 28th day of November, 1893. D. L. Sinkler, (L. S.) *Notary Public S. C.* Witness, R. S. Cathcart, M. D."

The defendant's grounds of appeal are as follows: I. Because his honor erred in admitting what was called the dying declarations of the deceased, the same being under oath, and a part of which was as to matters not connected with his (deceased's) death. II. Because the court erred in not allowing a witness for the State (R. H. Sweeney, Esq., trial justice,) to testify what offence he had charged in a warrant issued by him against one James Oliver. III. Because the court erred in not allowing the defendant and other witnesses to prove what was said to the defendant, at his (defendant's) house, a few minutes after the gun was fired, and yet allowed witnesses for the State to testify what was said to them by the deceased soon after he was shot, the defendant not being present. IV. Because his honor erred in not allowing the defendant and two of his witnesses to give the answer of the deceased to a question asked said deceased by the defendant a few minutes after the shooting, all of which was germane to the issue.

The first ground of appeal presents two objections to the admissibility of the paper received as a dying declaration: 1st. Because it was under oath; 2d. Because it contained statements not relating to the immediate circumstances attending the death of the declarant. These two objections must be considered separately. No authority has been cited to show that the fact, that the declaration is under oath, renders it inadmissible, and we have not been able to find any authority sustaining such a proposition. On the contrary, the authorities seem to be the other way. See 1 Bish. Crim. Proc. (3d edit.), sec. 1,213; and to same effect, see 1 Greenl. Evid., § 161; 6 Am.

& Eng. Enc. Law, 130; and *State* v. *McEvoy*, 9 S. C., 208, where the admissibility of a declaration made under oath is plainly recognized. Indeed, we are at a loss to conceive of any reason why the fact that a dying declaration is made under oath should render it inadmissible as evidence; and it is but due to the counsel for appellant to add, that in the argument here he seemed to lay but little stress upon this objection.

As to the second objection, it is sufficient to say that the point raised by this objection was neither presented to or passed upon by the Circuit Judge, and, therefore, under the well settled rule, cannot be considered here. While it may be true that so much of the deposition of the decased, introduced as a dying declaration, as related to a previous difficulty between the parties in the month of May preceding the day of the homicide, would have been incompetent if objected to at the time, upon the ground that it did not relate to the circumstances of the death, yet having been received without objection, it became competent for the purposes of this case; especially as there was no motion to suppress or strike out that part of the deposition. The record shows that when the deposition was offered in evidence, it was objected to by counsel for appellant solely "on the ground that it had been sworn to by the deceased before it was made;" and that objection was overruled, properly, as we have seen. The court was not called upon to make, and did not make, any ruling as to any other point. It is insisted, however, that when the paper was admitted in evidence, counsel for defendant excepted; but such exception must be regarded as relating only to the ruling made by the Circuit Judge, and cannot be considered as covering any other possible objection which might have been made, to which the attention of the Circuit Judge had not been called.

The second ground of appeal is clearly untenable, for two reasons: 1st. Because the warrant, which was not shown to have been lost or destroyed, was the best evidence of the fact sought to be proved. 2d. Because the fact proposed to be proved, at most, amounted to nothing more than an expression of opinion, on the part of the trial justice or of the person upon whose information the warrant was issued

(either or both) against Oliver, that Oliver, and not the defendant, was the guilty party, and, of course, such an expression of opinion was clearly incompetent.

The third ground of appeal presents two questions: 1st, whether the court erred in refusing to allow the witnesses for defendant to state what was said to the defendant a short time after the shooting took place; 2d, whether there was error in allowing the witnesses to state what was said by deceased immediately after he was shot. As to the first question presented by this ground of appeal, it is clear that there was no error. The fact sought to be elicited was nothing but hearsay, and, therefore, incompetent. It certainly needs no argument or authority to show that a conversation between a third person and the accused, after the homicide had been committed, at his own house, is not competent evidence for the accused upon his trial for such homicide. Indeed, Richardson, the only witness examined as to this point (except the defendant himself), was not even asked what he said to the defendant, when, a few minutes after the homicide, he found him in his own house, in bed. It is true, that when the defendant was on the stand as a witness, he was asked what was said to him, and he was not allowed to answer that question; but both he and his witness, Richardson, were allowed to testify that, in consequence of what was said to the defendant, he immediately got up, put on his clothes, and taking his gun with him, went to Lee's store, where his gun was examined, and then went to Green's store and asked the section-master, with whom he was working, to examine his gun. So that, practically, the defendant got all the advantage he would have had, if he and his witness had been allowed to testify what was said to defendant at his house; for, as we infer from the argument of his counsel, the object was to show that as soon as he was informed that he was accused of shooting Wilson, he immediately got up and took his gun with him, for the purpose of having it examined to see if it had been recently fired.

The second question presented by the third ground of appeal has no basis upon which to rest it; for the "Case," as prepared for argument here, does not show that the testimony as to

what the deceased said immediately after he was shot, was objected to. But even if it had been, it would have been clearly competent as part of the *res gestœ*, being nothing more than the declaration or exclamation of the deceased when he crawled into Green's store immediately after he was shot. As to the fourth ground of appeal, it is only necessary to say that no such testimony, or offer of testimony, as is made the basis of this ground, appears in the "Case," for we are unable to find any offer to prove any conversation whatever between the deceased and the defendant, after the former was shot.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to the Circuit Court for the purpose of carrying into effect the sentence heretofore imposed.

NOTE.—This judgment, as filed on June 25, directed "that the case be remanded to that [Circuit] Court for the purpose of having a new day assigned for the execution of the sentence heretofore imposed." Upon its being brought to the attention of the justices of this court that the day fixed by the sentence for the hanging of the defendant had not yet arrived, they filed an order on July 5, directing the clerk to amend the judgment of this court, so as to read as above stated.