10128

STATE v. MARSHALL.
(98 S. E. 130.)

1. Homicide—Dying Declarations—Hope of Life.—To make a dying declaration admissible, deceased, at time of making declaration, must have lost all hope of life.

2. Homicide—Dying Declarations—Hope of Life.—It does not necessarily follow that because deceased sends for a physician, or asks that one be sent for, he has any hope of life from the timely aid of such physician, for he may want physician to relieve suffering.

3. Homicide—Dying Declarations—Determination of Deceased's Condition.—Whether deceased was in such condition, at time of making alleged dying declaration, that declaration is admissible, is primarily for the trial Court.

4. HOMICIDE—REVIEW—DISCRETION OF COURT.—Trial Court's ruling that conditions under which deceased made alleged dying declarations were such as to make declarations admissible will not be reversed on appeal, unless clearly erroneous and prejudicial.

Before SHIPP, J., Lancaster, Spring term, 1917. Affirmed.

Duff Marshall was convicted of manslaughter, and he appeals.

*Mr. John T. Green,* for appellant, submits: *Appellants contention is that according to the testimony of the witness, Taylor, the deceased had not "abandoned all hope of recovery"— that he was not "without hope of life" at the time he is alleged to have made the declaration in question. Unless the testimony clearly shows that the deceased had at the time "abandoned all hope of recovery"—that at the time he was "without hope of life," then we submit, the Circuit Judge erred in admitting the testimony of this witness as to the alleged declaration of the deceased that defendant "shot me for nothing:"* 49 S. C. (L.) 349; 98 S. C. 390.

*Solicitor J. K. Henry,* for State-respondent (oral argument).

January 22, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

On indictment for murder, appellant was convicted of manslaughter. The only assignment of error is in the admission of the alleged dying declaration of deceased, who was shot about 10 o'clock at night, at the house of Betsy Massey. There were no eyewitnesses to the shooting. Appellant and deceased were outside of the house. A number of persons in the house testified that they heard a conversation between them and two shots, both of which struck deceased; and from the effect of one of them he died, about 6 o'clock the next afternoon.

Roy Taylor, a witness for the State, testified that he went to the house where deceased was shot, about 12 o'clock the same night, and carried him home, about 2½ miles, in a wagon; that after he got home he made the declaration in question—that appellant shot him for nothing. The foundation laid by the State was as follows:

"Q. What did he say about dying? A. He told me it was no use to send after a doctor; he was going to die. I didn't know who shot him, and asked him. Q. Wait a minute. How many times did he say that? Why did he say it was no use to send for a doctor? Anybody saying anything about sending for a doctor? A. Yes, sir. His wife told me to be quiet until the doctor came. Q. What did he say? A. He said, if he didn't make haste and come, it would do no good, for he was going to die. Q. That he was going to die? How long did he live after that? That was about what time of night? A. It was in the morning. It was about 5 o'clock in the morning. * * * Q. How long did he live? A. He lived until about 6 in the afternoon. * * * Q. About 12 hours afterward? A. Yes, sir. Q. He said it was no use to send for a doctor? A. Yes, sir. Q. That he was going to die? A. Yes, sir. Q. Now, do you know whether he got any hope after that of getting better? A. No, sir; he didn't get any hope. Q. About getting better? A. No, sir."

Appellant contends that the declaration was inadmissible, because it did not appear that deceased had lost all hope of life. As evidence of that fact, appellant relies upon the statement of deceased that "if he (the doctor) didn't make haste and come, it would do no good, for he was going to die."

We do not think that the only inference of which tht statement is susceptible is that the deceased thought that, if the doctor did make haste and come, he could save his life. The statement also warrants the inference that deceased believed that death was imminent nd certain, but that, if the doctor did not get to him pretty soon, he could do no good,

in the way of relieving his pain and suffering; for, in connection with the use of the words "it would do no good," he added, "for he was going to die."

While it is true that, to make a dying declaration admissible, the deceased must have lost all hope of life, it does not follow necessarily that, because he sends for a physician, or asks that one be sent for, he has any hope of life 1, 2 ˙from the timely aid of a physician.   One may be so severely wounded that he may know that death is imminent and certain, and yet he may want a physician to relieve his suffering.   See 2 Jones Ev., section 332, and cases cited in the note.

The trial Court must primarily decide whether the conditions exist under which such declarations are admissible, and its ruling will not be reversed, unless it is clearly 3, 4   made to appear that it was erroneous and prejudicial. *State v. Smalls*, 87 S. C. 550, 70 S. E. 300.· Appellant has failed to satisfy the Court of error in the ruling complained of.

Judgment affirmed.

MESSRS. JUSTICES FRASER and GAGE concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS did not sit.