## 10261

### STATE v. SIMMONS.

#### (100 S. E. 149.)

1. HOMICIDE—STATEMENT BY ACCUSED AT CORONER'S INQUEST ADMISSIBLE. —In homicide prosecution, defendant's statement at coroner's inquest was admissible, though inquest was held during afternoon, and defendant had been given no breakfast or dinner, where he had prior thereto voluntarily told policeman his connection with the case, and where there was no evidence that he had complained of not having had food, or that lack thereof had influence on him in making statement.

2. CRIMINAL LAW—WHEN CONFESSION ADMISSIBLE.—In homicide prosecution, confession of 19-year-old negro defendant to policemen *held* admissible, as against objection that he was ignorant of his right not to answer questions and had not been advised thereof.

3. HOMICIDE—WHEN EVIDENCE SUFFICIENT TO SUSTAIN CONVICTION OF MANSLAUGHTER.—In homicide prosecution, evidence *held* to sustain conviction of manslaughter.

4. HOMICIDE—ONE STRIKING BLOW IN SUDDEN HEAT GUILTY OF MAN-
SLAUGHTER.—One who struck fatal blow with deadly weapon, not in
self-defense, but in sudden heat and passion, aroused by sufficient
provocation, was guilty of manslaughter.

5. HOMICIDE—ERROR IN INSTRUCTION ON MURDER HARMLESS ON CONVIC-
TION OF MANSLAUGHTER.—In homicide prosecutions, instructions relat-
ing to murder charge were harmless, where conviction was for man-
slaughter.

6. CRIMINAL LAW—REFUSAL OF INSTRUCTIONS COVERED BY THOSE GIVEN,
NOT ERROR.—A party has no right to complain of refusal to give
requested instructions, if the law of the case is correctly charged,
though not in the precise language preferred by him, especially if his
request is so framed that it might be misleading.

Before SHIPP, J., Charleston, Fall term, 1918. Affirmed.

LeRoy Simmons was convicted of manslaughter, and he
appeals.

*Messrs. Logan & Grace* and *J. I. Cosgrove,* for appellant.
*Messrs. Logan & Grace* cite: *As to alleged confessions
made to police officers by defendant while under arrest:* 168
U. S. 543; 69 S. C. 74; Greenleaf, sec. 225; 74 S. C. 478;
69 S. C. 72; 6 A. & E. Enc., p. 530; 18 L. R. A. (N. S.), p.
768; 50 L. R. A. (N. S.), p. 1077; 9 Richardson's Law, p.
428; 93 S. C. 149; 98 S. C. 498; 104 S. C. 146; Russell on
Crimes —. *As to admitting in evidence alleged statements
by defendant at coroner's inquest:* 31 S. C. 297; 11 S. E.
292; 12 S. C. 619; 36 S. C., p. 324; 15 S. E., p. 588; 105
S. C. 55; 106 S. C. 289; 3 A. & E. Cases, p. 513 (note to
*Tuttle v. People*); 18 L. R. A. (N. S.) 768 (notes to
*Ammons v. State*); 50 L. R. A. (N. S.), p. 1077 (notes);
33 L. R. A. (N. S.) 467; 86 Iowa 450; 13 S. C. 389. *As
to refusal of trial Judge to charge as follows: "The mere
fact that a person intended to kill another when he struck
at him is not sufficient to prove that his intention was mali-
cious and murderous, since he may have been acting in
self-defense. Nor does the fact that the slayer intended
not to kill, but only to disable, make the killing manslaughter.
And, though a person killing another bore express malice*

*against him, he is not guilty of murder when he acted in self-defense."* 86 S. C. 87; Wharton on Criminal Law, 3d Ed., p. 359; 103 S. C. 204.

*Solicitor Thomas P. Stoney,* for the State, cites: *As to admitting in evidence confessions made by defendant while under arrest:* 36 S. C. 524-532; 44 S. C. 344-348; 49 S. C. 410-413; 49 S. C. 550-554; 54 S. C. 174-176; 58 S. C. 111-112; 69 S. C. 72-74; 74 S. C. 477-478; 74 S. C. 551-556; 78 S. C. 83-92. *As to statements by defendant at coroner's inquest:* 105 S. C. 55 (differentiated). *As to refusal of presiding Judge to charge:* 103 S. C. 437; 47 S. C. 67. *As to presiding Judge submitting to the jury the question of manslaughter:* 76 S. C. 184. *As to refusal of presiding Judge to charge defendant's request as set out in the fifth exception:* 72 S. C. 104.

August 25, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant was indicted for the murder of Ethel Scriven, and convicted of manslaughter. The crime was committed in the city of Charleston, about 11 o'clock at night, on July 21, 1918. Defendant was the only witness to the fatal encounter. He testified that he had been going with deceased for about a year, but they had had a falling out that day, and about 9 o'clock that evening she saw him in company with another woman, and called him, but he refuseed to go to her, saying that he had told her he did not care to have anything more to do with her, whereupon she threatened to cut his throat, but went on off. On his way home in company with Julius Scurven, he went out of his way to avoid meeting her; but she saw them on Line street, near Coming, and came toward him with a brick in her hand, with which she attempted to strike him, but was prevented by his getting behind Scurven. She then went back, and

around the block, and met them on Sheppard street, and came up with something in her hand. He did not know what it was, but afterwards found out that it was a rock, and as she came up she said, "Now, I am going to kill you." He then drew his knife to protect himself, and Scurven walked on and left them. She then took his hat off his head and said she was going to cut it up. He said, "Give me my hat," and reached for it, when she raised the thing in her hand to strike him, and he stabbed her. She told him he had cut her, and asked him to take her to a doctor, which he tried to do; but she fell, and he called Scurven, who was a block away, to come and help him take her to a doctor. He came, and they got her up; but she fell again. He then left her there, and went to his brother's house, and Scurven went to tell her people. Deceased was found by others and taken to a hospital, where she died from loss of blood. There was testimony that the fatal wound was a stab "in the cheek of the thigh," and that it was inflicted from the rear.

Defendant was arrested about 5 o'clock the next morning at his brother's house, and taken to the police station, where he was asked if he had killed deceased, and admitted that he had. He told the officers that he had thrown the knife with which he had stabbed her into a certain lot, where it was found with blood on it, and afterwards identified by him as his knife. Two policemen testified that these admissions were freely and voluntarily made, and were not influenced by threats, hope of benefit, or other inducement held out to him. About 1 or 2 o'clock the same day he was carried to the coroner's inquest, where he made a statement, which was reduced to writing, read over to him, and signed by him, after being told by the coroner "that the State would not compel him to make a statement, it was up to him whether he would or not, and whatever he said would be held for on against him." In that statement he said:

"She grabbed my hat off my head, and said she was going to cut up my hat. I ran behind her to try and get my hat, and she picked up a rock, and to keep her from hitting me I stabbed her."

In other respects the statement is not materially different from his testimony at the trial. The testimony of the policemen and the statement made to the coroner were objected to as incompetent, under the circumstances. The grounds relied upon in argument are that defendant was a negro youth of 19 years, ignorant of his rights and without friend or counsel, and was not warned or advised by the policemen who had him in their custody, that he had the right to refuse to answer their questions; and as to the statement made to the coroner the further objection is urged that defendant was carried to the inquest about 1 or 2 o'clock in the afternoon, without having been given breakfast or dinner. He so testified.

With regard to the objection last mentioned, while there is no evidence to contradict defendant's statement, the record fails to show that he made any such complaint at the time of or before making his statement to the coroner. He did not even say at the trial that the fact had any influence upon him in making the statement. No reason appears why he should have been starved into making a statement, since it appears that he had already freely and voluntarily told the policemen about his connection with the homicide. So, even if true, it cannot avail appellant, not even as a makeweight, because the circumstances do not warrant the inference that it was done to influence him to make a statement, or that it actually had any such effect.

The following cases show that the other objections urged are untenable: *State v. Baker,* 58 S. C. 111, 36 S. E. 501; *State v. Middleton,* 69 S. C. 72, 48 S. E. 35; *State v. Henderson,* 74 S. C. 477, 55 S. E. 117. These cases show, too, that in deciding whether confessions made to an officer having the party in custody are free and

voluntary, or are influenced by threats or other inducements the conduct of the officer will be rigidly scrutinized; nevertheless, that it rests in the judgment and discretion of the trial Judge to decide, in the light of all the circumstances, whether the proper foundation has been laid for the admission of such testimony, and that his ruling will not be disturbed, unless it is clearly wrong and prejudicial. We see no error in the rulings complained of.

There was ample testimony to sustain the verdict, as will appear by reference to the statement above of the evidence and its tendencies. The jury evidently found that it was not necessary for defendant to strike in self-defense, and that he did so in sudden heat and passion, aroused by deceased's snatching off his hat and threatening to cut it up. The Court was asked to charge: "The mere fact that a person intended to kill another when he struck at him is not sufficient to prove that his intention was malicious and murderous, since he may have been acting in self-defense. Nor does the fact that the slayer intended, not to kill, but only to disable, make the killing manslaughter. And, though a person killing another bore express malice against him, he is not guilty of murder, when he acted in self-defense."

The request was refused on the ground that it involved a charge on the facts. Technical consideration of the request shows that it was hardly objectionable on that ground while it contains only propositions of law, it will be noted that the statement found in the second sentence is not expressly qualified by the same condition which qualified those contained in the first and third, to wit, that the slayer was acting in self-defense. It is so qualified only by implication from the manner of its connection with the first sentence. As appellant had testified that he did not intend to kill deceased, the second sentence, without the qualification indicated being clearly expressed, might have been misunderstood by the jury, and construed as an expres-

sion of the Judge's opinion that, if appellant did not intend to kill, but only to disable, they could not convict him of manslaughter. That would have been an erroneous conception of the request and of the law; because, even though appellant did not intend to kill, but only to wound or disable deceased, yet, having used a deadly weapon, if he struck the fatal blow, not in self-defense, but in sudden heat and passion, aroused by sufficient provocation, he was properly found guilty of manslaughter. As the proposition contained in the first and third sentences bore only on the charge of murder, which was eliminated by the verdict, the refusal to give them was clearly harmless.

Besides, the jury was very fully, clearly, and correctly instructed as to the law of the case in the general charge, and other requests which were given, wherein the request refused was substantially charged, though not in the same language. But a party has no right to complain, if the law of the case is correctly charged, though not in the precise language preferred by him, especially if his request is so framed that it might be misleading. Considering the charge as a whole, we are satisfied that appellant was not prejudiced by the refusal of the request.

Judgment affirmed.