17945

The STATE, Respondent, v. W. M. BETHEA, Appellant

(126 S. E. (2d) 846)

*Messrs. Goldberg & Cottingham, John C. Lindsay,* and *Tison & Tison,* of Bennettsville, *for Appellant,*

*Robert L. Kilgo, Esq., Solicitor,* of Darlington, *for Respondent,*

*Messrs. Goldberg & Cottingham, John C. Lindsay* and *Tison & Tison,* of Bennettsville, *for Appellant, in Reply.*

July 20, 1962.

Brailsford, Justice.

On August 31, 1960, Leona Prevatte was shot twice with a pistol. She died the next day. W. M. Bethea was tried at the June, 1961, term of the court, Honorable J. A. Spruill presiding. He was convicted of manslaughter and sentenced to a term of imprisonment. He has appealed on three exceptions, which relate to the charge of the trial judge and the admission in evidence of certain statements as dying declarations. These issues may be better understood after a review of the pertinent evidence, most of it from appellant's testimony.

The decedent was a widow, and according to appellant's testimony, had been his mistress for some eight years prior to her death. She lived near Bennettsville in a home which he had assisted her in establishing and furnishing and to which he had a key. From time to time he contributed to her support. Her eleven year old daughter lived with her, but was absent on the night of the homicide. Because of his own poor health, financial difficulties and the age of the child, appellant had for some time sought to terminate his relationship with Mrs. Prevatte. She opposed his suggestions and was inclined to become excited and abusive when the subject was broached.

On the night of the homicide, Mrs. Prevatte and appellant had supper together in Cheraw. On their return trip, he brought up the subject of ending their relationship. "She got terribly upset and excited—just carried on, cursing and abusing" him. They both got out of his automobile at her home, and he told her to go on in and "cool off"; that he would be back in a few minutes and they would "talk this thing over and—get something straightened out about it."

After leaving for a short time, appellant returned and, at Mrs. Prevatte's invitation, entered the front room of the house. As he walked across this room, she approached along a hall, her right hand behind her back and an open door between them. Quoting from appellant's testimony: "She says, 'You're going to spend the night with me, aren't you?' I says, 'No, we've already been into that now. I thought we had that understood.' She says, 'Well, you're not going to leave me,' and she dropped her hand down to her side. At that time, I saw she had that pistol in her hand. So when I saw the pistol in her hand, I went in my pocket for my gun. I had my gun in my right-hand pants pocket. She says, 'You son of a bitch, I'm going to kill you,' and she come up with it like that (bringing hand up front) and when she did, I shot twice, simultaneously, jumped back and she fell; when I shot her she fell around like that and threw her hands up and says, 'My God, you shot me.' " (As an inspector for the South Carolina Public Service Commission and constable, appellant customarily carried a pistol.)

When asked why he shot Mrs. Prevatte, appellant testified that he did so to save his own life, that he knew she would kill him.

After the arguments of counsel and the court's charge, counsel for appellant, in the absence of the jury, requested an instruction that "the defendant does not have to run under the law of self defense. He must retreat but not run." Counsel conceded that the law of self defense had been charged correctly, and stated:

"But the position we take is that the solicitor argued to the jury that he should have run. And we say as a matter of law in South Carolina a defendant is not required to run."

This request was refused upon the ground that the solicitor's remarks "were simply argument on the facts and not a question of law."

The refusal of this request is assigned as error. The record shows only that the solicitor "argued to the jury that the defendant situated as he was should have closed the door and run." The trial judge heard the entire argument and was in a much better position to appraise it than we are. We cannot say that he erred in concluding that the argument was of a permissible inference of fact and did not require amplification of the admittedly correct charge.

The cases relied upon by appellant, *State v. Jordan,* 109 S. C. 409, 96 S. E. 221; *State v. Burdette,* 118 S. C. 164, 101 S. E. 664, are authority for the proposition that it is error for the court to instruct the jury that a defendant must run, if he will not thereby increase his own danger. They are not authority for the proposition that a defendant is entitled to an instruction that he need never run, as a means of retreat, no matter how open and how safe this way of escape may appear to be. Whether the appellant should have closed the door between him and his assailant and left the premises, by whatever means, was an issue of fact, which was properly submitted to the jury, under a correct charge as to the law. The appellant was entitled to no more.

Appellant's counsel made another request for an instruction, which was refused, as follows:

"Then, if the Court please, we ask that you charge the jury the law in regard to an invitee. You can't invite a person into your home and then shoot them down. We ask that you charge the law of an invitee."

This request was properly refused. The sharp issue for the jury was whether defendant should be acquitted on his plea of self defense or convicted. There is no suggestion in

the evidence that this difficulty arose from an attempt to eject appellant. The contrary plainly appears. Appellant testified that he shot to save his own life. The court instructed the jury that he should be acquitted on this plea if it was established by the evidence, or if there was a reasonable doubt that it was so established. Again, he was entitled to no more.

Appellant's reliance upon *State v. Bradley*, 126 S. C. 528, 120 S. E. 240, is misplaced. There the slayer was an invitee on the premises of the victim. His conviction was reversed because, in the light of the evidence, the court's charge on the right of the occupant to eject had the effect of "practically annihilating his plea of self defense." The opinion in the *Bradley case,* by Mr. Justice Cothran, stated four "essentially different situations which call for the application of the law of habitation, curtilage, and premises." The principles quoted in appellant's brief are said to be applicable: *"When the occupant is the slayer and stands upon the right to protect his habitation, apart from the plea of self defense."* Neither this situation, nor any of the others stated in the opinion, is applicable here.

The last exception charges error in the admission in evidence of certain statements made by Mrs. Prevatte to Sheriff Weatherly, at the scene of the shooting, and to a nurse at the hospital.

Under the long established rule, which we quote from *State v. Johnson,* 26 S. C. 152, 1 S. E. 510, dying declarations are competent evidence, for or against the accused, upon preliminary proof of certain conditions.

"The rules in regard to such testimony are well settled: 1st. That death must be imminent at the time the declarations in question are made. 2nd. That the declarant must be fully aware of this to be without any hope of life * * * And 3rd. That the 'subject of the charge' must be the death of the declarant, and the circumstances of the death must be the subject of the declarations."

Following a telephone call by appellant, Sheriff Weatherly arrived at the Prevatte home about 10:30 p. m., shortly after the shooting. He found Mrs. Prevatte on the floor, bleeding profusely, apparently in pain and unable to move her legs. The sheriff testified that after some preliminary conversation about getting her to the hospital, which she protested on the ground that she had no money, she said to him: " 'I want Cindy.' I asked who Cindy was and she said, 'That's my baby.' I asked her where Cindy was. She said, 'Bill knows where she is.' Then she said, 'Bill shot me.' I asked her why he had shot her and she said, 'For no reason at all other than he got mad.' She further stated, 'I'm going to die and I don't care,' says, 'I want him to pay.' "

This testimony was first elicited in the absence of the jury. Its admission as a dying declaration was objected to upon two grounds: 1st. The admission of a dying declaration violates the constitutional right of a defendant to be confronted by the witnesses against him. 2nd. The evidence was insufficient to show that the declarant had given up all hope of recovery when the statement was made.

Mrs. Prevatte was taken to the hospital immediately after her conversation with the sheriff. She was operated on by Dr. C. A. Kinney. He testified that one bullet had passed through her body, causing "a large gaping hole" through the liver and "tremendous hemorrhage." The other had lodged in the spine, causing paralysis of the left leg. She was treated "with transfusions and everything else for shock, but her course was progressively downward. She stayed in shock. She stayed in circulatory collapse. Her kidneys shut down. And she died at five-forty-five p. m. on the first of September."

Over the same objections which had been interposed to the testimony of Sheriff Weatherly, a registered nurse was allowed to testify as to statements made to her by Mrs. Prevatte before the operation, as follows:

"Q. Now speak out so they can hear you.

"A. The first thing she said was that Bill Bethea shot her and that she was going to die and she wanted him to pay for it. And then she told Dr. Kinney that she wanted him to take care of the little girl, Cindy.

"Q She told Dr. Kinney that she wanted him to take care * * *.

"A. (Interrupting) Yes. *And then later on* she said that *if she died,* she didn't want him to come to the funeral—talking about Mr. Bethea."

Counsel again objected, calling attention to the qualifying words, "if she died." This objection was overruled. However, counsel's objection to the substance of further testimony by this witness was sustained, leaving nothing in the record as to what was said "later on," except that Mrs. Prevatte did not want appellant to attend her funeral which could not have been prejudicial.

The objection on constitutional grounds is athwart the decisions of this court, to which we adhere, and apparently unanimous authority elsewhere. 40 C. J. S., Homicide, § 287c.

The second ground of objection raised an issue of fact which, upon sufficient evidence, was resolved against appellant by the trial judge. In a criminal case, we sit to review errors of law only. South Carolina Constitution, Art. 5, Sec. 4. The determination by trial court of the preliminary facts, on which the competency of a dying declaration depends, will not be disturbed on appeal "unless clearly incorrect and prejudicial." *State v. Franklin,* 80 S. C. 332, 60 S. E. 953; *State v. Smalls,* 87 S. C. 550, 70 S. E. 300; *State v. Marshal,* 11 S. C. 356, 98 S. E. 130.

In *State v. Banister,* 35 S. C. 290, 14 S. E. 678, 167 A.L.R. 174, followed in *State v. Hall,* 134 S. C. 362, 133 S. E. 24, decision as to the competency of a dying declaration was equated to that of a confession, which also requires proof of preliminary facts. Required restraint in reviewing the trial court's admission of a confession was expressed by

Mr. Justice Woods, in *State v. Henderson,* 74 S. C. 477, 55 S. E. 117, in the following language:

"In deciding the question of fact whether such a confusion is free from threat or inducement, the conduct of the officer will be rigidly scrutinized, but the conclusion of the circuit judge on that issue of fact cannot be reviewed by this court unless so manifestly erroneous as to show an abuse of judicial discretion."

This language has been quoted with approval in a number of cases; among them, *State v. Lexington,* 223 S. C. 1, 73 S. E. (2d) 850; *State v. Brown,* 212 S. C. 237, 47 S. E. (2d) 521. In others a "clearly wrong and prejudicial" test has been applied. *State v. Simmons,* 112 S. C. 451, 100 S. E. 149; *State v. Green,* 227 S. C. 1, 86 S. E. (2d) 598. Obviously there is no inconsistency between these cases, nor between them and those which have been cited as to dying declarations. Affirmance is required when, as here, the conclusion of the trial judge is a reasonable inference from the evidence.

By their exception and argument, counsel for appellant assert that the substance of the declarations was, in part, incompetent. This objection was not made in the lower court and the point is not available here. See *State v. Head,* 60 S. C. 516, 39 S. E. 6, and *State v. Talbert,* 41 S. C. 526, 19 S. E. 852, in which this faimiliar rule was applied to dying declarations.

Affirmed.

TAYLOR, C. J., and Moss and BUSSEY, JJ., concur.

LEWIS, J., dissents.

LEWIS, Justice (dissenting).

Otherwise agreeing with opinion of Justice Brailsford, I am in disagreement with the conclusion reached with reference to the refusal of the trial judge to give the requested charge as to the law relating to an invitee.

The basic issue in the trial of the defendant was whether or not he shot the deceased in self defense. The homicide occurred in the home of the deceased and the defendant, under his testimony, was an invitee therein. Under the testimony of the defendant, he was there to discuss with the deceased the question of bringing to an end the illicit relationship between them, which had extended over a period of several years. She wanted him to spend the night with her and told him that he was not going to leave. When the defendant persisted in his intentions to leave, the deceased raised the pistol which she held in her hand and made the statement, "you son of a bitch, I'm going to kill you." At that time, the defendant pulled his pistol, which he customarily carried as a constable, and shot her twice. The defendant further testified that he shot the deceased to save his own life, that he knew she would kill him.

Under the facts most favorable to the defendant, he was an invitee in the home of the deceased, had indicated a desire not to remain and was forbidden to leave by her at the point of a gun under circumstances which, he says, placed him in fear for his life.

The issues which arise under a plea of self defense can only be properly determined by a proper understanding of the legal rights of the parties at the time. It is therefore, the duty of the trial judge, where the plea of self defense is involved, to appropriately define for the jury the respective legal rights of the parties at the time and place of the occurrence under inquiry.

Under the testimony most favorable to the defendant, he had a right to have the jury pass upon his defense in the light of his claimed status as an invitee or guest in the home of the deceased. As an invitee, he was entitled to notice to leave the home if his presence was no longer desired by the owner and also the right to peaceably depart without interference by the owner, if he desired to do so of his own volition, as he says that he did. Such an instruction would have defined

the rights of the defendant as an invitee and, if the jury concluded that he occupied such status at the time, would have permitted his actions to be judged in the light of such principles. The legal right of the parties at the time vitally affect the determination of the issues as to the duty to retreat, whether the shooting was necessary, and whether, being where he had a right to be, he was without fault in bringing on the difficulty.

It is correctly stated that there is no evidence in this record that the deceased was engaged in any attempt to eject the defendant from her home at the time of the homicide. Since the deceased was not so engaged at the time, it is reasoned that there was no duty on the part of the court to instruct the jury as to the legal right of an invitee to notice to leave before he is assaulted by the owner of the premises. I do not understand the issue here to be so narrowly drawn. The trial judge instructed the jury that "where two parties are involved in an altercation in the home of one of the parties to the altercation, the person in his or her own home is under no obligation to retreat but the other party is under the obligation to retreat unless it reasonably appeared that his or her danger would be increased thereby." The foregoing is the *only* instruction given to the jury relative to the respective rights of the parties on the premises under the plea of self defense. The instructions of the court left the jury without guide by which to determine whether the defendant, if an invitee, was where he had a right to be and whether the defendant had a right as an invitee to expect to be free from assault from the deceased until ordered to leave.

In *State v. McIntosh*, 40 S. C. 349, 18 S. E. 1033, the occupant of the home killed an invitee. No notice to leave was given by the owner before the homicide. The following from that case emphasizes the importance attached to the status of the parties in determining their respective rights under the plea of self defense:

"For the judge, while fully recognizing the sacredness of one's home, and the right of the owner to protect it from all intruders, very properly drew a distinction between a case of a trespasser intruding himself into the dwelling house of another, and a case in which one enters the house of another by the invitation of the owner. For here the undisputed evidence was that the deceased was urgently invited to the house of the prisoner for the purpose of engaging in a Christmas frolic, and that they did engage in a drunken debauch, which doubtless gave rise to the difficulty that terminated in bloodshed. It does not seem to us that the defendant can claim anything from that well-recognized right which allows one to protect his house, where his invited guest was shot down in his own house, without any notice, even to leave."

The right of an invitee to be free from assault by the host, until ordered to leave or his conduct deprived him of the right to remain, vitally affected the issue as to whether the defendant was at fault in bringing on the difficulty. The question was not whether the deceased should have given notice to the defendant to leave as justifying her actions in allegedly assaulting the defendant, but whether the defendant has a right to be in the home as an invitee until ordered to leave. The instructions sought would have given the jury a guide by which to determine this vital question. The failure to do so was prejudicial error.

I would reverse the judgment of the lower court and remand for a new trial.