## STATE v. JOHNSON.

1. Dying declarations are admissible in evidence where death was imminent when they were made, the declarant so thought and was without hope of life, and his death was the subject of the charge and the circumstances of the killing were the subject of his declarations.
2. These conditions having been all fulfilled in this case, the statements of the deceased were properly received in evidence as dying declarations.

Before HUDSON, J., Abbeville, October, 1886.

This was a prosecution for murder. The opinion states the case.

*Messrs. T. P. Cothran* and *W. C. McGowan,* for appellant.

*Mr. Orr,* solicitor, contra.

February 19, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The sole question presented by this appeal is as to the competency of certain testimony received as the dying declarations of the deceased. The rules in regard to such testimony are well settled: 1st. That death must be imminent at the time the declarations in question are made. 2nd. That the declarant must be so fully aware of this as to be without any hope of life. *State* v. *Quick,* 15 *Rich.,* 349; *State* v. *McEvoy,* 9 *S. C.,* 212; *State* v. *Gill,* 14 *Id.,* 413. And 3rd. That the "subject of the charge" must be the death of the declarant, and the circumstances of the death must be the subject of the declarations. *State* v. *Terrell,* 12 *Rich.,* 321, and the authorities there cited.[1] In this case there can be no doubt that the first and third of these rules were fully complied with, because it appears that death ensued the same night, or very early the next morning, after the declarations were made, and the other testimony tended to show that the deceased was in a dying condition at the time the declarations were made; and the subject of the declarations was as to the manner in which the shooting, whereby the mortal wound was inflicted, was done.

It is earnestly contended, however, that the second rule was not complied with, in that it did not appear that the deceased was fully conscious of his impending dissolution and without any hope of recovery. It appears that the deceased was shot on September 20, 1886, and that on the evening of the next day, so late that it became necessary to procure lights, his statement as to the circumstances under which he received the fatal wound was taken

---

[1] See, too, *State* v. *Belton,* 24 *S. C.,* 185.—REPORTER.

down in writing by a very intelligent trial justice, who testified that he found the deceased "lying on a bed in his house in a weak condition." Again the witness said that the deceased was "in a very low condition;" that the deceased did not sign the declaration, because he was unable to do so; "they held the light very close to him, and he said that he could not see; and I asked him to try and sign it, and I put the pencil in his hand, and I asked him if he could feel the pencil, and he said he could not." To the question of the counsel for prisoner, "Didn't he have the pencil in his hand?" the reply was, "Yes, sir; I put it in there, but he said he could not feel it. He didn't make his mark. No, sir, he could not take hold of the pencil, and he could not make the mark." The declarations, as taken down, began with the following question from the trial justice: "Do you think you will get well, or do you think it will kill you?" To which the answer was: "I don't know. I don't think I will ever get well. The doctor don't tell me much." Then follows an account of the details of the conflict with the prisoner, in the course of which the deceased received the fatal wound, which it is unnecessary to repeat here.

It seems to us that this question and answer were quite sufficient to show that the deceased had no hope of recovery at the time, even when considered apart from the surrounding circumstances; but, when looked at in the light of those circumstances, we think it clear that all the requirements of the rule are fully met. Here was a man lying on his bed "in a very low condition," suffering from a wound, inflicted with a deadly weapon in close conflict, which very speedily proved to be mortal, with the film of death then probably spreading over his eyes, as shown by his inability to see, though the light was held very close to him, and with the numbness of death then probably creeping up his extremities, as shown by his inability to feel the pencil when placed in his hands; and when asked the question above stated, replying to the last part of the question, "do you think it will kill you?" first, as was very natural for a person of his condition to do, by saying, "I don't know," as, of course, he could not *know*, and then recurring to the other branch of the inquiry, saying: "I don't think I will ever get well. The doctor don't

tell me much.'' Which was in effect saying the doctor gives me no hope, and I do not believe I will recover. When it is remembered that not a word was said, either by the deceased or by the doctor or any one else, indicating that there was any hope for the recovery of deceased, and considering the very low condition in which the deceased was, of which he was manifestly conscious, we cannot doubt that the declarations were made by the deceased under a belief of a speedily impending death, and were, therefore, competent testimony in the case.

We are aware that cases have been cited, and others might be, decided elsewhere, in which the courts have gone to extreme lengths in excluding dying declarations as not coming fully up to the rule, but we do not think any set form of words should be required to show that the declarant was in such a condition as to render his declarations competent, but that the court must draw a rational conclusion from all that was said, taken in connection with such surrounding circumstances as must have been known to the declarant, as to whether or not the declarant was in such a condition of mind as would render his declarations competent. None of the cases in this State have gone to such lengths as we find in some of the cases elsewhere, and we are not disposed to follow such cases. This case, it seems to us, is a stronger case than that of *The State* v. *Nance*, 25 *S. C.*, 168, in which the declarations were held competent, and that case fully supports the conclusion reached here.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.