### STATE v. PETSCH.

1. DYING DECLARATIONS—CASE CRITICISED.—There was no error in refusing to strike out of a dying declaration the words: "I will state the cause and occurrence of the shooting;" but there may have been error in striking out of it the repetition of an offensive message received by deceased from prisoner just before the shooting.    The better practice is to receive the declaration as made, and instruct the jury to disregard such portions as are objectionable.    This case distinguished from State *v.* Talbert, 41 S. C., 526.

2. EVIDENCE.—There is no objection to proving by a witness in reply her relationship to the prisoner; and in this case such testimony is not shown to have been objected to.

3. IBID.—Defendant having testified as to what occurred between himself and a woman at his house just before the homicide, testimony by this woman as to this same occurrence was relevant in reply.

4. IBID.—There was no error in refusing to permit defendant on trial for murder to testify as to his reasons for not paying an account against him presented by a messenger from deceased a little while before the homicide was committed.

5. IBID.—Error will not be declared in the alleged refusal to permit an answer to a question, where the "Case" does not disclose such refusal, and where the testimony of this same witness covered all that this question could have elicited.

6. CHARGING JURIES.—In considering alleged errors in a charge to the jury, three rules must govern: 1, the charge must be considered as a whole; 2, the refusal to charge correct and applicable propositions of law in the language of a request is immaterial when the same propositions are charged in the language of the judge; and 3, if a requested charge contains bad law as well as good, it may be refused altogether.

7. IBID.—SELF-DEFENCE.—In charging that the accused had only to wait until his assailant made some overt act or demonstration, the trial judge in effect charged that the accused was not bound to wait until actually struck; and in charging that a party assaulted, without fault on his part in bringing on the difficulty, is not compelled to run, but must avoid the necessity of killing, if he can reasonably and safely do so, the trial judge in effect charged that the accused was not bound to show that there was no other possible means of escape except to kill his adversary.

8. IBID.—A request to charge which called for an expression of opinion as to the effect of the testimony as to the violent character of the deceased, or the good character of the accused, was properly refused; and the testimony as to character was properly left to the consideration of the jury in reaching their conclusion as to the guilt of defendant.

9. HOMICIDE—SELF-DEFENCE.—The jury were correctly charged: "If the appearances to the defendant at the time were such that he could not reasonably and safely avoid taking human life, and a man of ordinary reason and firmness would have arrived at the same conclusion, then it was not necessary for him to go any further."

10. IBID.—IBID.—This charge fully declared the rule, that the State must prove the guilt of the accused beyond all reasonable doubt, but that he was bound to establish his plea of self-defence only by a preponderance of the evidence.

11. CHARGING JURIES—THREATS.—Where every threat made by defendant against deceased was proved to have been communicated to the accused, a request to charge as to uncommunicated threats was properly refused.

12. IBID.—Where defendant testified that he had knowledge of the violent character of the deceased, error cannot be imputed to the judge in his refusal to charge that if deceased was of violent character, the law presumes that defendant knew it.

13. IBID.—FACTS.—The charge in this case was not a charge upon the facts in the case.

14. SELF-DEFENCE.—The charge in this case correctly declared what constituted self-defence.

Before WITHERSPOON, J., Charleston, June, 1894.

Indictment against Henry W. C. Petsch for the murder of J. H. Rickles, jr., on April 9, 1894. The judge charged the jury as follows:

The prisoner at the bar, Henry W. C. Petsch, is charged by the State with the crime of murder. The State charges that he, the prisoner Petsch, fired a pistol shot and wounded one John F. Rickles, jr., in this city, on the night of the 9th of April of this year, and that at the time he fired that pistol he was instigated and prompted by malice, either express or implied. The first question of fact for you to pass upon, the first issue made by this indictment between the State and the citizen, and upon which the State must establish the fact beyond a reasonable doubt, is that John F. Rickles, jr., came to his death from a wound of a pistol fired in the hands of the prisoner at the bar. If you are satisfied on that point, then the question arises, and you are to determine from the testimony you have heard on the stand, whether the prisoner at the bar be guilty of the crime of which he stands charged, or not guilty. Now, if it appeared here in evidence that the deceased came to his death by reason of a pistol shot wound inflicted by the prisoner, and nothing more appeared, then the law would presume malice from the killing and the use of the deadly weapon. This presumption rests upon the futher presumption that every sane person intends the probable consequences of his act, but whereas, in this case, the facts and circumstances attending the killing have been developed upon a judicial inquiry, then I charge you that there is no presumption of guilt in law resting upon the prisoner; on the contrary, the law presumes that he is innocent, and that presumption rests with him until it is overcome by the testimony introduced by the State on the stand, and satisfies you as tryers of the fact that he is guilty as charged, beyond a reasonable substantial doubt arising from a consideration of the testimony.

I have been requested to charge you as to this reasonable doubt. The defendant's counsel ask me to charge, and I so charge you as it is laid down in the books as authority, "that

reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in such a condition that they are unable to say that they feel an abiding conviction to a moral certainty to the guilt of the accused." Now, the law says that this doubt to which every prisoner is entitled when charged with a crime, must be a reasonable doubt. It must be a doubt arising from the consideration of the testimony, for which the juror can conscienciously give himself a reason why he cannot sign the verdict of guilty. If, after a fair and impartial consideration of all the testimony in the case, you have such a doubt, then the State has failed to establish the guilt of the party, and your verdict should be not guilty. It must be a substantial doubt, arising from the consideration of the testimony, as distinguished from a speculative or imaginary doubt, and I can charge you safely that it must not be a doubt influenced by your sympathy for the accused or by your prejudice against him, because the law contemplates that in the trial of this cause you, so far as you can, will divest yourselves of all feeling of human sympathy as certainly of all prejudice, and that you will be guided in reaching your verdict, whatever it may be, by your honest conviction derived from a consideration of the testimony.

Now, killing is either unlawful or it is justifiable, or it may be excusable. It is unnecessary for me to instruct you as to the circumstances under which the taking of human life would be justifiable. I will confine myself to instructing you as to what is unlawful killing and excusable killing. The unlawful taking of human life is either murder or manslaughter, and, under an indictment charging a party with murder, if the evidence is sufficient to justify either of such verdicts, you can find a verdict of guilty either of murder or manslaughter. Murder is the malicious taking of human life—it is nothing more or less than the evil, wicked intent to take human life. This evil, wicked intent to take human life, which is necessary to constitute the crime of murder, can be either expressed or implied—it may be expressed by the evil expression of the human lips indicating this intent on the part of the human heart, or it may be implied where the killing takes place under

such circumstances as indicate that it must have been prompted by a wicked, evil, depraved heart, devoid of social duty, and fatally bent on mischief. This evil intent must be a premeditated intent to take human life; but whilst it is necessary for the State to show that the evil intent controlled the act of kill-- ing, it is not necessary for the State to show that that evil, malicious intent existed for any given time before the killing; but it must be there—it must prompt, actuate—it must spring from this wicked heart, and must prompt the act of killing at the time of the killing. And as malice is a question of intent, it is of the utmost importance that the jurors should calmly and dispassionately consider all the testimony bearing upon the fatal act, in order to discover and determine what motive prompted the act of killing at the time. Was the motive this evil intent to take human life? If so, and you are so satisfied—if you are satisfied that the deceased came to his death at the hands of the prisoner at the bar by shooting with a pistol, and that the prisoner at the bar was at the time of the shooting actuated and prompted by this evil, malicious intent to take human life, he is in law guilty of murder, and your verdict should so find.

But if you conclude that the State has failed to establish his guilt of murder beyond a reasonable doubt, then you are to go a step further, and under this indictment you are to consider and determine whether or not the State has established his guilt of manslaughter beyond a reasonable doubt. Now, what is manslaughter? Manslaughter is where the act of killing is not prompted by this evil, wicked intent to take human life, as in the case of murder, but it is distinguished from murder by the absence of malice; it is where the killing takes place under the impulse of sudden heat and passion, aroused by a lawful provocation, and under circumstances that the law will not excuse the act of killing. It is my duty to say to you, as a matter of law, and I could not say less, consistent with my duty, that no words of provocation, however insulting, will justify in law the party to whom they are addressed or implied taking the law in his own hands, and committing an assault and battery, much less would it excuse the resort to a deadly weapon. I take it that it is unnecessary to say to an intelligent jury that

we are not here in the administration of public justice to be actuated by feelings of sentiment. That may do very well outside of this court house; but we are here to see that the law which is laid down as a rule of conduct for all citizens, is enforced. Whenever a party is charged with violation of law, it is my duty to give you the law; it is your duty to apply the fact to the law, and if the State has established the guilt of the party accused beyond a reasonable doubt, you should find a verdict of guilty, and you cannot allow your judgments, according to your oaths, to be influenced by sentiment or anything of that kind.

Mr. Foreman and gentlemen, you will regard the law as given you by the court. It is your duty to do so. If this court errs in giving you the law, the defendant is not without remedy; he has the right and privilege of having it corrected; therefore, whenever jurors take the law otherwise than from the court, justice is not carried out according to law, and we might as well close up this court house as the temple of justice. Now, has the prisoner at the bar been proven guilty beyond a reasonable doubt? You are to consider the testimony and apply the law as I have given it to you; and in deciding whether or not the prisoner is guilty of murder or manslaughter, or whether or not his plea of self-defence, to which I shall refer in a moment, can avail him in this case, you are to go back to the scene as it occurred on the streets of this city on the night of the 9th of April last, and say what then and there took place. If these parties, the deceased and the accused, met, it is for you to decide under what circumstances they met; it is for you to say what motive actuated the defendant in going to where he met the deceased; it is for you to say what motive prompted the deceased to go from this store to where he met the accused. You will see the importance of weighing well all the testimony in the case, in order to ascertain the motive which prompted the person at the bar to take the life of the deceased, if you conclude that he did take the life of the deceased.

I have been requested to charge you by the defendant counsel in reference to threats. I have been requested to charge you, and I do so charge you, "that if you believe from the evidence

that the deceased, Rickles, had made threats to kill the defendant, or do him great bodily harm, and that these threats were communicated to the defendant, such threats entitled the accused to be more watchful, and to interpret the acts of the deceased more harshly than he otherwise would have interpreted them; and these are facts for your consideration, independent of who brought on the difficulty, and whether or not the defendant had reason to apprehend danger to his life or great bodily harm." I so charge you, but I charge you in connection with that request, that if you believe that the deceased made threats against the prisoner at the bar, that would not authorize or justify in law the defendant shooting him on account of his having made threats.    While it is well calculated to make the party against whom the threats are made more vigilant for his own safety and security on meeting the party who made the threats, the party against whom the threats are made must wait until there has been some overt act or demonstration on the part of the party making the threats, before he can resort to a deadly weapon. There must be some act or demonstration on the part of the deceased manifesting an intention to carry out the threats, before the prisoner at the bar would be justified in law in resorting to a deadly weapon.    It is not for me to say what is to be the character of this demonstration; you are to judge of that in connection with the threats and the conduct of the deceased at the time of the conflict between the parties.

I have been requested to charge you with reference to the physical power of the deceased, and I do charge you as requested, "that the relative size and strength of the deceased and the accused should be considered by you in determining the question whether, or not, the defendant had reasonable grounds to apprehend death or great bodily harm at the hands of the deceased."    I so charge you.    You are to take this request in connection with all the other testimony and charge that I have given you.

I have been requested to charge you as to the defendant's good character.    The question of fact as to whether he has satisfied you, from the evidence, that he has established a good character is for you to determine.    I have been requested to

charge you, "that should the jury conclude from the evidence that the defendant has borne a reputation for peaceableness, they should require a greater degree of certainty in the proof of the maliciousness attributed to him than would be requisite if the contrary were shown." I so charge you. Every party charged with crime has a right to introduce and make proffer of his good character, that character having reference to the nature of the charge made against him, and if he does so, the jurors are required to take that testimony in connection with all the other facts of the case in determining whether the guilt of the party has been established beyond a reasonable doubt.

Whenever a party has been injured—shot, for instance—and he is *in extremis*, if he manifests an apprehension of impending death, if he expresses a consciousness that he will soon appear at the bar of his Maker, that he will soon die, then the law allows that person to make a statement of the circumstances under which he received his wound, and that is known in law as a dying declaration. Why is that allowed? It is upon the presumption in law that a man who is conscious that he is soon to face his God is under the same sanction and obligation to speak the truth that a witness would be upon the stand under oath; and hence, under those circumstances, that dying declaration is competent and admissible as evidence, although it is an *ex parte* expression on the part of the dying man. As to the effect of it, that is a question entirely for you. I have held that a portion of this paper, purporting to be the dying declaration of the deceased, admissible; it is for you to say what weight you will attach to it.

As I have already indicated to you, the State assumed the burden of establishing the guilt of a party charged with crime beyond a reasonable doubt, and any man who is charged with crime in this court can fold his arms and sit still and mute, and rely upon his presumed innocence; or, if he sees proper, he can interpose what is called an affirmative defence; self-defence is an affirmative defence. The prisoner has interposed that plea in this case. Self-defence is based upon the law of necessity; it is a deference which the law makes to the instincts of self-preservation. Whenever a party comes into court and

interposes a plea of self-defence, as the defendant in this case has done, then the law says he must make out that plea, he must satisfy the jury of the truth of his claim, not beyond a reasonable doubt, as the State is required to do upon the whole case, but he assumes the burden of establishing his plea by the preponderance or greater weight of the testimony.

Now, when can a plea of self-defence avail a party? The party who interposes that plea must satisfy you, by the preponderance of the evidence, that he was without fault in bringing about the difficulty resulting in the death of the party killed. That if the prisoner at the bar either challenged or accepted a challenge from the deceased to fight, or if he provoked the rencontre which resulted in the killing of the deceased, then I charge you that the plea of self-defence cannot avail him, because the law says that, in order to avail him, he must be without fault in bringing about the necessitous circumstances of which he complains. Not only so, he must satisfy you that he was not the aggressor in the difficulty, but that the deceased, Rickles, assaulted him, he being without any fault in provoking him, and that the nature and character of that assault upon him by Rickles was such as to lead him honestly to the conviction that he was placed in imminent peril of losing his life, or of sustaining great bodily harm by such assault.

The law does not allow any man who interposes a plea of self-defence here to say under what circumstances he will fire his pistol and take human life. As I have told you, he must be without fault in bringing about the difficulty. Then, again, the assault made upon him by the deceased must be of such a character as to lead him honestly to believe that he was in imminent peril of his life, or of great bodily harm. He must not only honestly believe this, but you are to determine whether a man of ordinary reason and firmness, situated as the defendant was situated, would have been led to the same conclusion under the same circumstances. If he would have been, then the plea has been made out, and should avail the defendant. If not, then the plea has not been made out. Now, I charge you further in reference to this plea of self-defence that, where a

party is assaulted and the party upon whom the assault is com-
mitted is without fault in bringing on the difficulty, he is not
compelled to run, but he must avoid the necessity of the killing
if he can reasonably and safely do so, because the law is jealous
of human life.    But if the appearances to him at the time were
such that he could not reasonably and safely avoid taking
human life, and a man of ordinary reason and firmness would
have arrived at the same conclusion, then it was not necessary
for him to go any further; and I wish you to understand me on
that point, that it is only encumbent on the defendant to avoid
the necessity of taking human life when he can do so with
safety to himself.   In judging as to what motive prompted or
actuated the prisoner at the bar, the law says you must go in
the light of the testimony, as best you can, back to the scene
where this thing occurred, and you are to judge of the motive
which prompted him and his conduct on that occasion by the
circumstances as they presented themselves to him on that
occasion, and in that light it is for you to say whether or not
he fired and took the life of the deceased in the exercise of the
right of self-defence.    If he did, and you are satisfied that he
has made out his plea, then it is a good plea, and should avail
him; if he has failed to make it out, then it would not avail
him.    The form of your verdict will be either guilty, which
will mean guilty of murder, guilty of manslaughter, or not
guilty.    If you conclude that the State has not established
murder, you will inquire whether he is guilty of manslaughter.
If the State has failed to establish the guilt of the prisoner,
either of the crime of murder or manslaughter, or if the prisoner
has made out his plea of self-defence by the preponderance of
the evidence, and in your judgment, under the instructions I
have given you, his plea should avail him, then your verdict
should be, not guilty.    Whatever verdict you find, sign your
name as foreman.

   The defendant was convicted of manslaughter, and appealed,
*inter alia,* on the following grounds:
   II. Because his honor, the presiding judge, erred in refusing
the defendant's sixth request to charge, as follows: 6. "That if

the jury conclude from the evidence that the accused had reason to believe his antagonist ready to execute harmful intentions, to take his life or do him great bodily harm, he was not called upon to wait until actually struck before employing means of self-defence; nor is he now required to show that there was no other possible means of escape than to kill his assailant, but only to satisfy the jury that he acted in a manner such as any person of ordinary reason and firmness would have done under similar circumstances.''

III. Because his honor, the presiding judge, erred in refusing the defendant's seventh request to charge, as follows: 7. ''That if the evidence shows that the deceased was a person of violent habits, revengeful, or notoriously a dangerous man, and that these characteristics were known to the defendant, such evi- dence bears directly on the intent or motive to be ascribed to the conduct of the accused, and calls for a less degree of cer- tainty in the proofs of necessity to take life than would be requisite if it had been shown that the deceased was a man of opposite traits of character. Of such effect also is the good character of the accused for peaceableness.''

IV. Because his honor, the presiding judge, erred in refusing the defendant's eighth request to charge, as follows: 8. ''That there is no distinction between evidence of facts and evidence of character. The latter is quite as relevant to the question of guilt or innocence as the former, and that the object of intro- ducing such evidence is to induce the jury to believe from the improbability that a person of good character would have con- ducted himself as alleged; that there is some mistake or mis- representation in the evidence on the part of the prosecution, and such evidence is as strictly evidence, and is as worthy of the jury's attention, as is the testimony on any other fact in the case.''

V. Because his honor, the presiding judge, refused the de- fendant's ninth request to charge, as follows: 9. ''Where one, who is without fault himself, is attacked by another in such a manner and under such circumstances as to furnish reasonable grounds for apprehending a design for taking away his life, or to do him some bodily harm, and there is reasonable ground

for believing the danger imminent, or that such design will be accomplished, he may safely act upon appearances and kill the assailant, if that be necessary to avoid the apprehended danger, and the killing will be excusable, although it may afterwards turn out that the appearances were false, and there was, in fact, neither design to do him serious injury nor danger that it would be done."

VI. Because his honor, the presiding judge, erred in refusing the defendant's tenth request to charge, as follows: 10. "That while the burden of proof is on the defendant to establish his plea of self-defence, yet he is not required to prove this beyond a reasonable doubt, but it is sufficient if this is shown by the preponderance of the evidence; and on the whole case the jury must be satisfied, beyond a reasonable doubt, of the guilt of the accused, otherwise they must acquit."

VII. Because his honor, the presiding judge, erred in refusing the defendant's thirteenth request to charge, as follows: 13. "If you believe that the deceased made threats against the defendant to kill or do him great bodily harm, which threats were not communicated to the defendant, yet these threats are to be considered by you in determining with what purpose the deceased approached the defendant, what his intention was when he went out of his store to meet the defendant, and who was the aggressor."

VIII. Because his honor, the presiding judge, erred in refusing the defendant's fourteenth request to charge, as follows: 14. "That in this case the question as to who commenced the difficulty is a material inquiry; it is, therefore, necessary that the jury should be satisfied, beyond a reasonable doubt, that the accused was the aggressor, before they convict him of the crime charged."

IX. Because his honor, the presiding judge, erred in refusing the defendant's sixteenth request to charge, as follows: 16. "That if the evidence shows that the deceased was a person of violent habits, revengeful, or notoriously a bad man, the law presumes that these characteristics were known to the defendant."

X. Because his honor, the presiding judge, erred in charging

the jury on the facts as follows: "It is my duty to say to you, as a matter of law, and I could not say less consistently with my duty, that no words of provocation, however insulting, will justify in law the party to whom they are addressed or implied taking the law in his own hands, and committing an assault and battery, much less would it excuse the resort to a deadly weapon. I take it that it is unnecessary to say to an intelligent jury that we are not here, in the administration of public justice, to be actuated by feelings of sentiment; that may do very well outside of this court house, but we are here to see that the law, which is laid down as a rule of conduct for all citizens is enforced. Whenever a party is charged with violation of law, it is my duty to give you the law; it is your duty to apply the facts to the law, and, if the State has established the guilt of the party accused, beyond a reasonable doubt, you should find a verdict of guilty; and you cannot allow your judgments, according to your oaths, to be influenced by sentiment or anything of that kind. Mr. Foreman and gentlemen, you will regard the law as given you by the court. It is your duty to do so. If this court errs in giving you the law, the defendant is not without remedy; he has the right and privilege of having it corrected; therefore, whenever jurors take the law otherwise than from the court, justice is not carried out according to law, and we might as well close up this court house as the temple of justice."

XI. Because his honor, the presiding judge, erred in charging the jury as follows: "If the prisoner at the bar either challenged or accepted a challenge from the deceased to fight, or if he provoked the rencontre which resulted in the killing of the deceased, then I charge you that the plea of self-defence cannot avail you; because the law says that, in order to aid him, he must be without fault in bringing about the necessitous circumstances of which he complains; not only so, he must satisfy you he was not the aggressor in the difficuly, but that the deceased, Rickles, assaulted him, he being without any fault in provoking him, and that the nature and character of that assault upon him by Rickles was such as to lead him honestly to the

conviction that he was placed in imminent peril of losing his life or of sustaining great bodily harm by such assault."

*Messrs. Buist & Buist, Murphy & Farrow,* and *M. R. Rivers,* for appellant.

*Mr. Jervey,* solicitor, contra.

February 18, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. Under an indictment for the murder of J. H. Rickles, jr., the defendant was tried and convicted of manslaughter, and from the judgment rendered appeals upon numerous exceptions. The circumstances immediately attending the homicide may be thus briefly stated: On the evening when the deceased was shot, he had sent by a servant a bill against the prisoner for collection, which was returned unpaid, with an exceedingly offensive and dirty message from the prisoner to the deceased. When the message was delivered, the deceased said: "All right, then I will see him in the morning or to-night." Shortly afterwards the prisoner left his house, and while walking on the sidewalk on his side of the street, he was approached by the deceased, coming from his place on the other side of the street, and when he got within about fourteen feet of the prisoner, the deceased was shot by the prisoner, inflicting the fatal wound from which death ensued in a very few days. None of the other witnesses heard any words pass between the parties, but the prisoner, in his testimony, said: "The first and only words I heard were, 'What in the hell'"—and before the sentence was concluded, the pistol was fired. The prisoner also testified that the deceased when he approached him "was walking tolerably rapidly, with his hand in this position (indicates with hand at right hip pocket)."

The exceptions are twenty in number, but as the first, twelfth, thirteenth, and fourteenth were very properly abandoned at the hearing, they need not be further noticed. The remaining exceptions may be divided into two general classes: first, those which impute error to the Circuit Judge in his rulings as to the admissibility of testimony; second, those imputing errors of omission and commission in his charge to the jury.

10—43

146 STATE *v.* PETSCH.

The fifteenth exception alleges error, "in refusing to strike out of the alleged dying declaration all after the word 'die' and before the word 'it;' and further erred in striking out all after the word 'shooting' up to the word 'it,' thus changing the whole tenor of the declaration, and misleading the jury." For a proper understanding of this exception, it will be necessary to set out the declaration, which was in writing, as it read when first offered in evidence, as well as to state what occurred in the court below when the declaration was first offered. The following is a copy of the paper referred to: "*Dying declaration of the deceased, J. H. Rickles, jr.* Personally appeared before me, J. H. Rickles, jr., who being told that he was in a dying condition, and realizing the same, makes the following statement, to wit: My name is J. H. Rickles, jr.; I am twenty-seven years of age; I was shot yesterday afternoon, about 8 o'clock, by a man by the name of Petsch, who works for Cohen & Triest. I know that my condition is hopeless, and am fully aware that my time is short; and realizing that I am about to die, (I will state the cause and occurrence of the shooting.) [Petsch owed me a bill in the sum of $5.24; I presented the bill to him two weeks ago; he sent me word that I must send the bill in nine days time; that last night I sent the bill to him; I received this answer from him, that I must take the bill and stick it up my God damn ass. I hate to repeat such words, but that is the message I received from him. I said I would see him about it.] I walked to the door of my grocery store, and saw Mr. Petsch coming along the opposite side of the street. I stepped out of my store and went across the street. I stepped upon the sidewalk about fifteen feet in front of him, and before I could say one word to him, he drew his pistol and shot me. I was in my shirt sleeves, and had no weapon of any kind upon me. As soon as I was shot in my chest, I turned and walked over to my store. After shooting, Petsch turned and ran towards his house. I made no attempt to strike him—I was not near enough to strike him if I had wished to. Neither of us said a word; I did not have a chance to say anything to him, for he shot me as soon as he spied me."

The following colloquy passed between the court and counsel

when this dying declaration was offered in evidence: Counsel for prisoner moved to strike out of the dying declaration all after the words "I am about to die" down to the word "it." The court held that the declaration is relevant to the word "shooting," and all after that word down to the word "it" is inadmissible, and all following the word "it" is admissible, and to that extent the motion to strike out was sustained. To make this more plain, we have enclosed the words which counsel moved to strike out in parenthesis, and have enclosed in brackets the words which the court held should be stricken out. Upon the announcement of the ruling of the court, counsel for the prisoner excepted, and also objected to that portion indicated by the court being stricken out, as he had made no motion to that effect. The court then said: "If the defendant's counsel desires any portion of this declaration held by the court as inadmissible, or withdraws his objection to it, it will be admitted, and the objection not having been withdrawn, the portion indicated as irrelevant will be stricken out." Thereupon counsel for prisoner said: "My position is, that leaving it in the shape my friend desires it, it is misleading. I don't want to be placed in a position that by saying so I can get in a lot of irrelevant testimony." The solicitor then offered "to exclude any part of the testimony which is irrelevant, or leave it all in, as counsel for the defence prefers." No response to this offer having been made, the court, after cautioning the jury not to allow defendant's cause to be prejudiced by anything that had been said, directed the dying declaration to be read, omitting such portions thereof as had been stricken out as irrelevant. It will thus be seen that the question presented by this exception is *not* whether *any* portions of the declaration should have been stricken out, for the offer of the solicitor to allow it all to go in was not excepted to, but the question is whether the Circuit Judge erred in refusing to strike out *all* of the words mentioned in defendant's motion, and in holding that some of those words, to wit: "I will state the cause and occurrence of the shooting," should not be stricken out.

It seems to us that there was no error on the part of the Circuit Judge in refusing to strike out those words, for they are

just such words as are appropriate to a dying declaration. Indeed, if there was any error on the part of the Circuit Judge at all, we are inclined to think that it was in striking out any portion of the declaration, as it is at least doubtful, under the case of *State* v. *Terrell,* 12 Rich., 231, recognized and followed in the case of *State* v. *Belton,* 24 S. C., 189, whether the whole declaration was not competent; for the word which defendant's counsel moved to strike out, as well as those which were stricken out, related to the circumstances immediately preceding the homicide, and were, doubtless, the immediate cause of the fatal difficulty. In addition to this, we may add that, under the case of *State* v. *Workman,* 15 S. C., at page 545, recognized and followed in *State* v. *Dodson,* 16 S. C., at page 460, it may well be questioned whether a motion to strike out of a dying declaration such portions thereof as may be supposed to be objectionable, is proper, and whether the better practice is not to move the Circuit Judge to instruct the jury to disregard such portions as may, for any cause, be deemed objectionable.

The case of *State* v. *Talbert,* 41 S. C., 526, cited by counsel for appellant, is not in conflict with this view; for there no motion to strike out was made, and the court was not called upon to decide, and did not decide, any thing upon the subject. It was simply stated that in that case no objection to the dying declaration, on account of its contents, was made when it was offered, and that "there was no motion to suppress or strike out" that portion of the declaration which referred to a difficulty which had occurred between the parties about six months previous to the homicide. But in this case no such question is presented, and is not to·be regarded as decided; for the only question here is whether the Circuit Judge erred in refusing to strike out of the dying declaration all those words which defendant's counsel moved to strike out. The fifteenth exception must be overruled.

The sixteenth exception imputes error to the Circuit Judge in admitting the testimony of Laura Petsch, that she was the wife of defendant, because the same was irrelevant and not in reply. In the first place, the "Case" does not show that any objection was made to this testimony when

it was offered, and that is sufficient to dispose of this exception. Besides, there is nothing more common than to ask a witness when offered, either in chief or in reply, what relation he bears to the party for or against whom he is offered as a witness, and we can conceive of no valid objection to such a question even if taken in time. This exception must also be overruled.

The seventeenth and eighteenth exceptions may be considered together, as they both impute error to the Circuit Judge in permitting the witness, Laura Petsch, to testify in reply as to what passed between her and the defendant when he left his house immediately before the homicide occurred, upon the ground that such testimony was irrelevant and not in reply. Inasmuch as the defendant when on the stand as a witness had given his version of what occurred between himself and this witness, just before he left his house, it is difficult to conceive of any good reason why this witness was not competent, in reply, to give her version. These exceptions must be overruled.

The nineteenth exception imputes error to the Circuit Judge in refusing to permit the defendant while on the stand to answer the question why he did not pay the bill when it was presented to him on the evening of the homicide by the witness Brown. In the first place, the "Case" does not show that the Circuit Judge made any such ruling; for while it does show that the question was objected to, it does not show that any ruling was made in response to the objection, as the counsel examining defendant proceeded at once to propound another question. But waiving this, and assuming that the answer to the question was ruled out, we see no error in such ruling. What was defendant's reason for failing or refusing to pay the bill was wholly immaterial to the case. It is very manifest that it had nothing to do with bringing about the difficulty which resulted in the death of the deceased, for the defendant had just testified that the bill had been several times before presented, and no trouble had arisen. It is equally manifest that the real cause of the trouble was the very rude and offensive message sent by the defendant to the deceased just before the homicide occurred. This exception must also be overruled.

The twentieth exception complains of error on the part of the
Circuit Judge in refusing to allow the witness, Ellen Bennett,
to reply to the following question: "Did he (Rickles)
offer Willie Brown anything to watch for Mr. Petsch?"
it being claimed that such testimony was relevant for
two reasons: 1st, for the purpose of impeaching the testimony
of the witness Brown; 2d, for the purpose of showing the ani-
mus of deceased on leaving his store just prior to the homicide.
Here again the "Case" fails to show that the judge refused to
allow the witness to answer the question. Besides this, it is
quite manifest from a brief extract taken from the testimony
of the witness, Ellen Bennett, as set out in the "Case," to
which no objection was interposed, that both of these objects
were attained. This witness having testified that she was in the
store of the deceased when Willie Brown brought the offensive
message from the defendant, proceeded as follows: "Did Mr.
Rickles say anything to Willie Brown? A. He told him to see
when Mr. Petsch passed, and to call him, and he said if Mr.
Petsch owned those words he had sent to him, he would beat
him. Q. Did he offer Willie Brown anything to watch for Mr.
Petsch? (Objected to.) Q. Did Mr. Rickles say anything
more? A. I did not hear him say anything more." Now as
Willie .Brown had testified that he was not told to watch for
Petsch, this testimony, received without objection, served the
purpose of contradicting Brown just as well, if not better, than
if Ellen Bennett had answered the only one of these questions
objected to; especially as she also testified that she did not hear
Rickles say anything more, and as she also testified that she
heard Rickles express his intention to beat Petsch, "if he
owned those words he had sent him." This was quite suffi-
cient to show the purpose with which deceased went to meet
the defendant. So that in any view of the matter this excep-
tion cannot be sustained.

We proceed next to the consideration of the several excep-
tions to the judge's charge to the jury. It will be well to state
first certain propositions in reference to this matter, which
are so well settled as to need no citation of authority to
support them. First, the charge must be considered as

a whole, and not by extracts isolated from the context. Second, the fact that the jury are not charged in the language of the request constitutes no objection to the charge, provided the proposition of law contained in the request, if correct and applicable, is given to the jury in language chosen by the judge. Third, if any request contains both good and bad law, the request may properly be refused, as it is not the duty of the judge to separate the good from the bad. It seems to us that the charge of his honor, Judge Witherspoon, which should be incorporated in the report of the case, looked at it in the light of these well settled propositions, is so wholly unexceptionable as to furnish its own vindication from the errors imputed to it.

Taking up these exceptions in detail, the second exception complains of error in refusing to charge defendant's sixth request, which should be incorporated in the report of the case, as well as all the other exceptions to refusals of requests to charge, as they are too long to be inserted here. The point of this exception seems to be that the prisoner was not called upon to wait until actually struck, and that he was not required to show that there was no other possible means of escape except to kill his assailant. It seems to us that both of these points were fully met when the jury were instructed that the accused had only to wait until his assailant made some overt act or demonstration, made some assault, necessarily implied that he was not bound to wait until actually struck; and when the jury were also told that where a party assaulted, and the party upon whom the assault is committed is without fault in bringing on the difficulty, he is not compelled to run, but he must avoid the necessity of killing his assailant, if he can reasonably and safely do so, necessarily implied that he was not bound to show that there was no other *possible* means of escape except to kill his adversary. Indeed, this exception, like all of the others imputing errors in refusing to charge as requested, is based really upon the ground that the judge did not use the language of the requests, but saw fit to use his own language in instructing the jury as to the points of law to which his attention was called by the requests to charge.

The third exception imputes error in refusing to charge as

set forth in defendant's seventh request. This request could not properly have been complied with, for the reason that the judge would, by adopting the language of that request, have expressed his opinion as to *the effect* of the testimony as to the violent character of the deceased. If the request had been simply that the testimony as to the violent character of the deceased should be considered by the jury, and given such weight as seemed to the jury proper, the request would probably have been complied with.

The fourth exception imputes error in the refusal of defendant's eighth request to charge. That request is also amenable to the same objection. In addition to this, the jury were instructed, though not in the language of the request, which could not properly be adopted, that a person accused of crime had a right to offer evidence of his good character, which, with all the other facts in the case, the jury were required to take into consideration in determining whether the guilt of the accused had been established beyond a reasonable doubt. What more could properly have been required, we are at a loss to conceive.

The fifth exception complains of error in refusing defendant's ninth request to charge. The gravamen of this complaint seems to be that there was error in failing to instruct the jury that the accused might safely act upon the "appearances" as they were presented to him at the time, although it might turn out afterwards that such appearances were deceptive, and that, in fact, there was no real danger. In view of the fact that the jury were distinctly instructed as follows: "But if the appearances to him at the time were such that he could not reasonably and safely avoid taking human life, and a man of ordinary reason and firmness would have arrived at the same conclusion, then it was not necessary for him to go any further," we see no foundation for the complaint made by this exception.

The sixth exception assigns error in refusing the tenth request of the defendant. This request called upon the Circuit Judge to instruct the jury that while the defendant was not bound to establish his plea of self-defence beyond a reasonable doubt, but only by the preponderance of the evidence, yet on the whole case the jury must be satisfied be-

yond a reasonable doubt of the guilt of the accused, otherwise they must acquit. And in this connection the eighth exception, based upon an alleged refusal to charge defendant's fourteenth request, may also be considered, as they both complain of error in failing to instruct the jury as to the necessity for the State to prove its case beyond all reasonable doubt. In view of the fact that the Circuit Judge throughout his charge time and again instructed the jury that it was incumbent upon the State to prove the guilt of the accused beyond all reasonable doubt, and that it was not incumbent upon the accused to establish his plea of self-defence beyond all reasonable doubt, but only by the preponderance of the evidence, we are unable to perceive any possible ground for either of these exceptions.

The seventh exception imputes error in refusing defendant's thirteenth request, which relates to uncommunicated threats. Inasmuch as the most, if not all, of the threats made by the deceased against the prisoner were shown to have been communicated to the prisoner, and he himself testified that he shot at the time he did, because of the threats he had heard, it is difficult to conceive what bearing the uncommunicated threats (if there were any) could have upon the case.

The ninth exception complains of error in refusing to charge defendant's sixteenth request, to the effect that if the deceased was shown to be "a person of violent habits, revengeful or notoriously a bad man," the law presumes that his character was known to defendant, whether the proposition, as presented in that request, could be sustained, without some further qualification, may admit of question; but we need not consider that now, for in view of the fact that the prisoner had testified that the violent character of the deceased was known to him, there was no necessity or room for any presumption.

The tenth exception imputes error to the Circuit Judge in charging on the facts, in the passage extracted from the charge and made the basis of this exception, which should be incorporated in the report of the case. A careful examination of this passage fails to show that the Circuit Judge expressed or even intimated any opinion whatever as to a single

fact in the case. On the contrary, it was nothing more than a very common and very proper admonition to the jury that they were not to be actuated by any feeling of sentiments, but their duty was simply to apply the facts as found by them to the law as laid down by the court, and in this there was no error.

The eleventh exception complains of error in that portion of the charge, copied in that exception, which should appear in the report of the case. It seems to us that the passage there quoted from the charge lays down the law applicable to the plea of self-defence correctly, and is fully sustained by the following cases: *State* v. *Beckham*, 24 S. C., 283, *State* v. *Wyse*, 33 S. C., 582, and other cases which might be cited. As was said in the case last cited: "The plea of self-defence rests upon the idea of necessity—a legal necessity—that is, such a necessity as in the eye of the law will excuse one for so grave an act as the taking of human life. Hence it must be a necessity which is not brought about by the fault of the accused."

After having thus gone over the exceptions, we again carefully examined the charge of the Circuit Judge as a whole, and we must say that we think the law applicable to the case was fully, fairly, and correctly laid down to the jury, and hence none of the exceptions to the charge can be sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.