### 6732

### STATE v. McCOOMER.

1. JURISDICTION—CONSTITUTIONAL LAW.—Under Article VI, Section 2, Constitution 1895, construed in connection with Section 119 of Criminal Code, one inflicting a wound in one county upon another, of which he dies in another county, may be tried in either.
2. NEW TRIAL.—Refusal of new trial on circuit will not be reversed because trial Judge in refusing the motion used expressions which showed he was in doubt as to whether witnesses had not been influenced in withholding important evidence by fear of popular clamor or violence.
3. EVIDENCE—DYING DECLARATIONS.—Rule for admission of dying declarations stated. Here the fact that declarant hoped to live until next day, *held* not to render his declarations inadmissible.

Before HYDRICK, J., Sumter, ————————, 1907. Affirmed as to McCoomer. Reversed as to Spivens.

Indictment against Jack McCoomer and George Spivens form murder of James E. Gaillard. From sentence on verdict of guilty with recommendation to mercy, both defendants appeal.

*Messrs. Bellinger & Welch,* for Spivens.

*Solicitor Walter H. Wells* and *Mr. H. D. Moise,* contra.

February 8, 1908.   The opinion of the Court was delivered by

Mr. JUSTICE Woods.   The trial of the defendants for the murder of James E. Gaillard in Court of General Sessions for Sumter County resulted in conviction with recommendation to mercy, and the consequent sentence to life imprisonment.   The fatal shooting occurred near a circus train at the town of Manning, in Clarendon County, but Gaillard died at a hospital in the city of Sumter.

The indictment charged the felonious assault in the County of Clarendon and the death in the County of Sumter.   The defendants made no objection to the trial in Sumter County, but now, on appeal, insist the trial was a nullity, alleging exclusive jurisdiction of the offense charged to be in the Court of General Sessions for Clarendon County, the fatal injury having been inflicted in that county.

The Act of 1880 (17 Stat., 336), Criminal Code, Section 119, provides:   "When any person shall be struck, wounded, poisoned, or otherwise injured in one county and die thereof in another, any inquisition or indictment thereon found by jurors of either county shall be as good and effectual in law as if the stroke, wound, poisoning, or other injury had been committed and done in the county where the party shall die.   And the person guilty of such striking, wounding, poisoning, or other injury, and every accessory thereto, either before or after the fact, shall be tried in the county where such indictment shall be found, and, if convicted, punished in the same mode, manner, and form, as if the deceased had suffered such striking, wounding, poisoning, or other injury and death, in the county where such indictment shall be found."   If this statute is still in force, without doubt, the defendants were subject to trial in either Clarendon, where the wound was inflicted, or in Sumter County, where the

death occurred. But it is contended the statute was repealed by Section 2, Article VI of the Constitution of 1895, which contains this provision: "Unless a change of venue be had under the provisions of this Article, the defendant shall be tried in the county where the offense was committed."

In the absence of a controlling statute, the offense is generally regarded committed in the place where the unlawful injury was inflicted and not where the death occurred. The reasoning upon which this doctrine rests is thus strongly stated by Judge Bowen, 16 Kan., 475: "It seems to us, without pursuing the authorities further, reasonable to hold that, as the only act which the defendant does toward causing the death is in giving the fatal blow, the place where he does that is the place where *he commits the crime,* and that the subsequent wanderings of the injured party, uninfluenced by the defendant, do not give an ambulatory character to the crime; at least that those movements do not, unless under express warrant of the statute, change the place of offense; and that, while it may be true that the crime is not completed until death, yet the death simply determines the character of the crime committed in giving the blow and refers back to and qualifies that act." Therefore, if the constitutional provision stood alone, it would be nothing more than an affirmation of the common law, and the defendants could be tried only in Clarendon County. But the constitutional provision must be read in the light of the statute of 1880. That statute had provided the indictment might be found in the county where death occurred the same as if the wound causing death had been inflicted and the death had occurred in that county. This was in effect an enactment that in contemplation of law, the offense should be considered to have been committed in both counties—that where the injury was inflicted and that where the death occurred—and that the trial might be held in either.

Repeals by implication are not favored and the obligation is on the courts to reconcile, wherever practicable, consti-

tutional and statutory provisions. When the Constitution provided for the trial of the defendant in the "county where the offense was committed," it meant in the county where the offense was deemed committed under the law as it then was; and the act of 1880, providing in effect that the offense was to be considered committed in both counties and triable in either, was the law then in effect. The appeal on this ground can not be sustained.

The contention is earnestly pressed on behalf of Spivens that the verdict is entirely without support in the evidence; and on behalf of both the defendants, it is urged that a verdict convicting both can not be a true verdict, because under the evidence offered by the prosecution, it is impossible that both could be guilty. As there is to be a new trial as to Spivens, we forbear any comment on the evidence, but after a careful examination of the entire record we can not say there was no evidence to support the verdict against both defendants.

A strong appeal has been made to this Court to set aside the verdict on the ground that the remarks of the Circuit Judge in refusing a motion for a new trial show that, in his opinion, the evidence had not entirely cleared the case from mystery, that witnesses had not told all they knew because of the popular indignation and excitement, and that witnesses might have been deterred from testifying because of fear of mob violence. Had the Circuit Judge held as a finding of fact that witnesses brought into court by legal process had been intimidated, by popular clamor or otherwise, into a suppression of testimony material to the defense, or that such testimony had been concealed before trial from fear or other cause and discovered after trial, or that the evidence left the homicide in such mystery that the verdict could only have rested on conjecture or caprice, we should have no hesitation in saying he had committed error of law in denying a new trial. Indeed we are sure the new trial would have been granted had the Circuit Judge reached any one of these conclusions. But the infer-

ence to be drawn from his remarks is that, on all these points
his mind was in a state of doubt. In that situation, as has
been often held, it was within his discretion to grant or re-
fuse a new trial. Besides these observations of the Circuit
Judge, there is nothing before this Court evidencing undue
public excitement or apprehension on the part of witnesses,
and we have nothing to rest conclusion or opinion on that
the Circuit Judge abused his discretion in not holding the
influence of popular opinion to be so strong that the defend-
ants did not have a fair trial.

The remaining question is whether the Circuit Judge
erred in sustaining the objection of the counsel for Mc-
Coomer to the testimony of Dr. Stuckey as to a statement
made to him by Gaillard, which the counsel for Spivens was
seeking to introduce as a dying declaration.

Dying declarations are admissible when it appears:  (1)
That the death of the deceased was imminent at the time the
declarations were made; (2) that the deceased was so fully
aware of this as to be without hope of recovery;
(3) that the subject of the charge was the death of
the declarant and the circumstances of the death was
the subject of the declarations. *State* v. *Banister,* 35 S. C.,
295, 14 S. E., 678; *State* v. *Johnson,* 26 S. C., 152, 1 S. E.,
510. Primarily, the Circuit Judge decides whether these
conditions have been met, and this Court will not interfere
with his rulings, except when clearly convinced that he
reached an incorrect conclusion prejudicial to the accused.
We are constrained to think that there was such error in
this case.

The witness Burgess was allowed to testify that imme-
diately after the shooting, Gaillard told him he was shot in
the stomach and was going to die; and in answer to the
question, "Did you have any trouble or difficulty at the
depot?" said, "God knows what I was shot for." After-
ward, on his way to Sumter, Gaillard told Dr. Carson he was
going to die. Dr. Carson testified he stayed with Gaillard
all the time after this until he died except about an hour and

a half; and though he tried to encourage him, at no time did he express by word or act any revival of hope.

This is the excluded conversation which Dr. Stuckey said he had with Gaillard soon after he reached Sumter: "I went in the room and spoke to him—I knew him well—and I said, 'Ted, tell me about this thing; how it happened;' and he says 'I can't tell you, my breath is too short;' and he said 'I will tell you tomorrow morning;' and I said 'No Ted, tell me now;' and he looked up surprised and said 'Why?' and I said 'Ted, was the man on the train or on the ground?' and he said 'He was on the ground and close to me.' He was breathing very badly and could not maintain any conversation."

Manifestly Gaillard was in a moribund condition. He had several times said he would die from the wound and had given no indication of a change of conviction on this subject. The fact that he hoped to live until the next day was no indication that he did not still regard himself as facing rapidly approaching death.

There is stronger reason for admission of the statement as a dying declaration than was shown in favor of the declarations held to be admissible in *State* v. *Nance,* 25 S. C., 168, and *State* v. *Johnson,* 26 S. C., 154, 1 S. E., 510.

This declaration of deceased, that the man who shot him was on the ground, was important to the defendant Spivens, who is a white man, for the reason that several witnesses for the State had testified the fatal shot was fired by a negro standing on the ground. On the contrary, William Logan, a witness for defendant McCoomer, who is a negro, had testified they were fired by a white man standing on the platform. Indeed this testimony of Logan was the most direct connecting Spivens with the homicide. This error was, therefore, favorable to McCoomer but prejudicial to Spivens, and as to him there must be a new trial.

The judgment of this Court is, that as to the defendant McCoomer, the judgment of the Court of General Sessions be affirmed; as to the defendant Spivens, that the judgment be reversed and the cause be remanded for a new trial.