## 11975

### STATE v. HALL

#### (133 S. E., 24)

1. HOMICIDE—TRIAL JUDGE SHOULD BE SATISFIED THAT DEATH WAS IMMINENT, DECEASED FULLY AWARE THEREOF, AND THAT CIRCUMSTANCES OF DEATH WERE SUBJECT OF DECLARATIONS.—In order that dying declaration be admissible, it is only necessary that trial Judge should be satisfied that death was imminent at such time, and that deceased was without hope of recovery, and that circumstances of death were subject of declarations.

2. HOMICIDE—DYING DECLARATION OF DECEASED, MADE SHORTLY AFTER INJURY, HELD PROPERLY ADMITTED UNDER CIRCUMSTANCES, ALTHOUGH DEATH DID NOT OCCUR UNTIL 33 DAYS LATER.—In prosecution for manslaughter, dying declaration of deceased, made shortly after injury, *held* properly admitted in view of circumstances, although death did not occur until 33 days later.

3. HOMICIDE—WRITTEN STATEMENT OF DECEASED BEFORE NOTARY PUBLIC, INCONSISTENT WITH DYING DECLARATION, AFFECTS ONLY CREDIBILITY AND NOT ADMISSIBILITY, AND WEIGHT IS FOR JURY.—Written statement signed before a notary public by deceased, inconsistent with dying declaration, goes only to credibility of declaration, and does not affect its admissibility; truth thereof being for jury.

4. HOMICIDE.—Question whether length of time intervening between assault and death rendered dying declaration inadmissible *held* for jury.

5. CRIMINAL LAW—TESTIMONY OF WITNESS DESCRIBING INJURIES OF DECEASED, STATING HE HAD BEEN BEATEN AND "STOMPED," HELD NOT TO WARRANT REVERSAL, IN ABSENCE OF SPECIFIC OBJECTIONS OR REQUEST FOR INSTRUCTIONS, WHERE COURT HAD WARNED WITNESS NOT TO STATE CONCLUSIONS.—In prosecution for manslaughter, testimony of witness describing injuries and bruises on deceased's body,

stating that deceased had been beaten and "stomped," *held* not to warrant reversal, in absence·of specific objections and request for instruction, in view of Court's warning to witness not to state conclusions, but only observations.

Before BONHAM, J., Spartanburg, July, 1925. Affirmed.

Fred Hall was convicted of manslaughter, and he appeals.

*Messrs. Nicholls, Wyche & Byrnes,* for appellant, cite: *Dying declarations:* 127 S. C., 256; 34 S. C., 136; 26 S. C., 152.

*Mr. I. C. Blackwood, Solicitor,* for respondent.

May 6, 1926.

˙The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The .defendant was tried for the murder of one T. D. Curtis in July, 1925; he was convicted of manslaughter and sentenced to two years' imprisonment. A previous trial had resulted in a similar verdict, the judgment upon which was reversed by this Court in 127 S. C., 256; 120 S. E., 849, for error in the admission of an alleged dying declaration made a few days before his death. Upon the trial under review the State offered the testimony of the widow of Curtis tending to establish a dying declaration made by the deceased on the morning after the alleged attack was made. The introduction of this declaration is the *gravamen* of the appeal.

The facts as gathered from the "Case" appear to have been as follows: The defendant was riding along the highway near the Town of Landrum, in a buckboard buggy drawn by two horses; his wife accompanied him. At a point in the road near Landrum they overtook the deceased, Curtis, and one Lewis Reno, whose automobile had become disabled in the ditch near the roadside. The deceased and Reno accepted the invitation of the defendant, Hall, and got up behind in the buckboard buggy, to ride to Landrum. After going a short distance an altercation arose between

Hall and the other two men, Curtis and Reno, and a fight took place between the three on the roadside. Curtis was knocked down by Hall, and Reno ran away. Hall and his wife went on into Landrum. The fight occurred between 8 and 9 o'clock at night, and Curtis was found early the next morning in a cornfield several hundred yards from the scene of the fight, helpless, badly beaten up, and bleeding from a wound in his head, besides with bruises on his body and a broken rib. He was carried by those who had found him to his home and put to bed. Within a short time he developed pneumonia, from which he apparently recovered sufficiently to sit up around the house, being, as his wife expressed it, "up and down." Later he had a severe relapse, and after lingering several days died on August 4th, about 33 days after the attack.

The alleged dying declaration which was admitted, and the admission of which is the mainstay of the appeal, was alleged to have been made in the presence of and to the wife and daughter of Curtis the morning after the fight, soon after he was brought to his home. It was to the effect that he, Curtis, had been out collecting, and on returning the car got out of condition; that he and Reno were together; that they left the car on the roadside and started walking into Landrum; that Fred Hall, the defendant, came along and invited them to ride; that they got into the buggy driven by Hall; that they had ridden but a short distance when Hall became angry at Reno and struck at him twice; that he then turned on Curtis and struck him above the ear with a pistol, knocked him down, and stamped upon and beat him, breaking his ribs; that later in the night Hall returned and kicked him again and robbed him of $35.00.

As a foundation for the admission of this declaration the State offered the testimony of Mrs. Curtis and of Mrs. Eton, a daughter of Curtis, to the effect: That at the time of the declaration Curtis said: "I am dying; there is no hope for me. Fred Hall has killed me." That Curtis lived 35 days

after that, but that he "suffered something awful, agony
every day and minute that he lived until he died." Dr.
Jervey, who was called in as a consulting physician, stated:

"That he first saw Curtis several days, probably five or
six, after the assault; 'I found him in a critical condition,
very critical condition; he was suffering from pneumonia.
He had air all in the cellular tissue of his body going from
his ear down to his hips.

"Q. Was he in imminent peril of death at that time? A.
Yes, sir.

"Q. Would you or not say, Doctor, that he was in immi-
nent danger of death, or death was imminent from the time
of the infliction of that wound? A. Yes, sir; his condition
was extremely critical from the moment, from the time of
the trauma, the time of the assault, up until the time of his
actual death; he was at all times in extreme danger."

The physician also testified that Curtis was suffering from
a compound fracture of his ribs; that a broken rib had
pierced his lung; and that when that happened it opened up
the raw lung tissue in connection with the wind pipe, which
is full of organisms, and that this caused blood poison,
which really was the cause of his death.

1    The rule as to the admissibility of a dying declaration
has been frequently stated by this Court as fol-
lows:

"To render these declarations admissible, it was only nec-
essary that the trial Judge should be satisfied: First, that
the death of deceased was imminent at the time the decla-
rations were made; second, that the deceased was so fully
aware of this as to be without hope of recovery; third, that
the subject of the charge was the death of the declarant and
the circumstances of the death was (were?) the subject of
the declarations." *State v. Faile,* 43 S. C., 52; 20 S. E., 798.
*State v. Taylor,* 56 S. C., 360; 34 S. E., 939. *State v. Jag-
gers,* 58 S. C., 41; 36 S. E., 434. *State v. McCoomer,* 79
S. C., 63; 60 S. E., 237. *State v. Gallman,* 79 S. C., 229;

60 S. E., 682. *State v. Franklin,* 80 S. C., 332; 60 S. E., 953. *State v. Smalls,* 87 S. C., 551; 70 S. E., 30. *State v. Long,* 93 S. C., 502; 77 S. E., 61. *State v. Petsch,* 43 S. C., 148; 20 S. E., 993.

It is also held in the case of *State v. Smalls,* 87 S. C., 550; 70 S. E., 300:

"These cases further declare that the Circuit Court primarily decides whether these conditions exist and its ruling will not be disturbed unless clearly incorrect and prejudicial."

To the same effect are *State v. McCoomer,* 79 S. C., 63; 60 S. E., 237. *State v. Franklin,* 80 S. C., 332; 60 S. E., 953.

We do not think that there is anything in the evidence tending to show that the Circuit Judge, who within the knowledge of the Court has had wide and successful experience in the trial of homicide cases while at the bar, on the other side of the question, came to a conclusion "clearly incorrect and prejudicial." In fact, from the circumstances detailed, it is not necessary to resort to the presumption that he was correct; they furnish abundant evidence that the necessary elements were present. *State v. Freeman,* 1 Speers, 57. *State v. Belton,* 24 S. C., 185; 58 Am. Rep., 245. *State v. Nance,* 25 S. C., 168. *State v. Johnson,* 26 S. C., 152; 1 S. E., 510.

The defendant offered in evidence a written statement made and signed by the deceased before a Notary Public and witnesses, which was not entirely consistent with the declaration in question, in that it omitted all reference to the alleged return, second assault, and robbery by the defendant, and contends that that inconsistency rendered the declaration inadmissible. The written declaration omitting reference to that incident may have affected the credibility of the alleged oral declaration, but it could not affect its admissibility. The truth of the declaration was a question for the jury, as to which, in the absence of

the Judge's charge from the record for appeal, it must be assumed that the interests of the defendant were properly safeguarded.

It is also contended that the length of time intervening between the assault and the death renders the declaration inadmissible. This was clearly a question for the jury to decide. As it is said in *State v. Banister*, 35 S. C., 290; 14 S. E., 678:

"The Judge must first determine whether the dying declarations offered were made under such circumstances as would render them competent evidence under the rules of law; but after they are properly admitted as competent, it is for the jury to pass upon their credibility, and in considering such question, they may consider the question of fact whether the deceased was in *extremis,* and whether he had lost all hope of recovery."

In 30 C. J., 254, it is said:

"The length of time elapsing between the making of the declaration and death of the declarant is one of the elements to be considered in determining whether the declarations were made under a sense of impending death."

In *Mattox v. U. S.*, 146 U. S., at page 151; 13 S. Ct., 54; 36 L. Ed., 917, the Court says:

"The length of time elapsing between the making of the declaration and the death is one of the elements to be considered, although as stated by Mr. Greenleaf, 'It is the impression of almost immediate dissolution, and not the rapid succession of death, in point of fact, that renders the testimony admissible.'"

The exception assigning error in reference to the testimony of Mrs. Curtis to the effect that the deceased had been stamped upon calls for little comment; that is what it received from counsel for the defendant. The witness was proceeding with a description of the injuries and bruises upon the body of Curtis when she examined him the morning after the assault; she stated that Curtis had

been beaten and "stomped", and was interrupted by an objection from defendant's counsel. No ground being stated, she continued, "On his left side and above his left ear and his limbs all had been 'stomped.'" Again an objection was interposed, stating no grounds. The Solicitor then warned. the witness to tell only what she saw. She repeated the statement about his having been "stomped", when the Court intervened and warned her not to state her conclusions, but only what she saw, and repeated the injunction. We think that the presiding Judge did all in his power, assisted by the Solicitor, to keep the witness within bounds. In view of the fact that counsel for the defendant stated no grounds of objection, and made no request for instructions to the jury to disregard her conclusions, and that from the colloquy the jury must plainly have understood that the objectionable portions of her testimony were not to be considered, no prejudicial error sufficient to warrant a reversal has been shown.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS, BLEASE and STABLER, and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. CHIEF JUSTICE GARY did not participate.