April 23, 1904. The opinion of the Court was delivered by
The defendant was convicted under the second count in an indictment, charging in the first count burglary and in the second larceny, in breaking into the house of one Morrow and stealing a watch belonging to his wife.
On the second night after the alleged crime was committed, R.F. Morris, intendant of the town of Willington, in company with several others, arrested the defendant. Under the influence of threats of violence, the defendant led the party to an old stump under which they found the watch. On account of the threats, the Circuit Judge excluded all statements made by the defendant at this time tending to criminate him, but admitted, against the defendant's objection, evidence that the watch was found under defendant's guidance. The exception to the admission of this testimony cannot be sustained. "The law is clear that, although such confessions are to be excluded as a whole, yet, when in consequence of information obtained from the prisoner, any material fact is discovered, it is competent to show that such discovery was made conformably with the information given." State v. Motley, 7 Rich., 337; State
v. Vaigneur, 5 Rich., 391; State v. Crank, 2 Bailey, 76.
It is true, that when these decisions were made the Constitution of the State did not contain the provision that no person "shall be compelled in any criminal case to be a witness against himself."
Without attempting to state the precise limitations of this *Page 74 
provision, we apply to it and adopt the language of the Supreme Court of the United States, in stating the general scope and purpose of the corresponding clause of the fifth amendment of the Constitution of the United States: "A brief consideration of the reasons which gave rise to the adoption of the 5th amendment, of the wrongs it was intended to prevent, and of the safeguards which it was its purpose unalterably to secure, will make it clear that the generic language of the amendment was but a crystalization of the doctrine as to confessions, well settled when the amendment was adopted, and since expressed in the text writers and expounded by the adjudications, and hence that the statements on the subject by the text-writers and the adjudications but formulate the conceptions and commands of the amendment itself." Bram v. United States,168 U.S. 543 (42 L. ed., 573).
The decisions of our Courts on this subject are in accord with the doctrine as to confessions well settled when these constitutional provisions were adopted. 2 Russell on Crimes, 961; 1 Greenleaf on Evidence, 231.
The day after the watch was found, the defendant, while under arrest and tied with a rope, was carried before the town council of Willington and also before a magistrate. Upon the solicitor offering to prove confessions made on these two occasions, the defendant's attorney insisted that they should be excluded, on the ground that the defendant must be presumed to have been at this time still under the influence of the threats of the previous night. This objection was overruled and the evidence received. Whether a confession offered in evidence was made free from the influence of fear or hope, is a matter for the investigation and determination of the Judge presiding at the trial, and his conclusion will not be disturbed by this Court unless there has been an abuse of discretion (State v. Workman,15 S.C. 540). There is no conclusive presumption that the mind of the defendant continued under the influence of fear produced by the threats made the night before he *Page 75 
was brought before the council and the magistrate (1 Wharton's American Criminal Law, sec. 694). There was, therefore, no abuse of discretion on the part of the Circuit Judge. At the close of his testimony, the second witness for the State, who testified as to the confessions made before the town council and the magistrate, stated that the defendant had been told before making these confessions, that "it would be lighter on him if he plead guilty and owned up the whole thing." As soon as the incompetency of the evidence appeared from this statement, the presiding Judge instructed the jury that this testimony as to confessions was not to be considered, but entirely blotted out of their minds. The Court could do no more, and if the defendant was prejudiced, the injury resulted from the impossibility of devising a perfect method of judicial administration and not any error of the Judge.
The fourth exception raises a much more serious question. The defendant on the trial testified that the watch was not hidden under the stump by him, but he was informed where it was by the woman, Grace, the house servant of Mrs. Morrow, whose house was within twenty steps of the stump. During the argument of the solicitor to the jury, he was proceeding to say to the jury that if the defendant was informed by Grace, the house servant, where the goods were, he should have so stated to Mr. Morris and Hemmingers on Tuesday night, when they captured him. Counsel for the defendant objected to this line of argument on the ground that the testimony showed that at that time the defendant was under duress, and that the solicitor had no right to comment on what he said, nor of his failure to say a certain thing. The Circuit Judge overruled the objection, and the solicitor proceeded to argue this to the jury.
It is difficult to imagine a situation of greater terror than that in which this negro boy was placed when arrested by Morris and the Hemmingers on Tuesday night. He was decoyed from his home, waylaid in the woods, at night, *Page 76 
seized and tied by three armed men, who forced him to find the watch and to make a statement by threats of whipping, with an intimation from which the defendant might have inferred there was danger of being thrown into the river. Under there circumstances the presiding Judge promptly ruled out as incompetent all statements made by the defendant, except his designation of the place where the watch was found. There was, therefore, no evidence whatever that the defendant did, or that he did not, say on Tuesday night that he had received his information as to the place where the watch was hid from Grace. To have received such evidence against the defendant, would not only have been contrary to established legal principles, but shocking to all sense of justice. When, therefore, the solicitor urged upon the consideration of the jury such an important statement of fact, which was not only not proved, but which the Court had excluded on the ground that it would be a gross injustice to the defendant to allow it to be proved, he was invading the right of the defendant to be tried on the evidence received against him and that alone. It was manifest that this was a powerful argument not based on the evidence, assailing the accused in a most vital point of his defense, and was, therefore, highly prejudicial to him. We think, therefore, that the defendant's objection to this statement and this line of argument of the solicitor should have been sustained.
MR. CHIEF JUSTICE POPE concurs.
MR. JUSTICE GARY dissents.